STATE OF NORTH CAROLINA v. DAVID EARL TRIPP

No. 843SC467

(Filed 21 May 1985)

1. **Narcotics § 3.3— opinion testimony based on tests by another—unreliability in this case**

   An S.B.I. chemist's opinion testimony that a substance was heroin based upon a mass spectrometer analysis performed by a second S.B.I. chemist in April 1983 was inadmissible where the first chemist testified that the spectrometer was broken from February 1983 until June 1983, and there was no evidence that it was repaired and working properly at the time of the test, since the test relied upon by the witness was not inherently reliable. However, the chemist's testimony was not prejudicial error in light of evidence that tests performed on the substance by the witness himself indicated that it was heroin.

2. **Criminal Law § 42.6— chain of custody of narcotics**

   The State properly proved the chain of custody of a substance from the time of its purchase from defendant until it was received by an S.B.I. chemist, and it was unnecessary for the State to prove the chain of custody of the substance after it was submitted to a second S.B.I. chemist for further tests where the results of the tests performed by the second chemist were inadmissible in evidence.

APPEAL by defendant from *Reid, Jr. (David E.), Judge.* Judgment entered 31 August 1983 in Superior Court, PITT County. Heard in the Court of Appeals 4 March 1985.

Defendant was found guilty of possession of heroin with the intent to sell and with the sale of heroin. The offenses were con-

solidated for judgment and defendant was sentenced to imprisonment for a term of six years. Defendant appeals.

Evidence presented by the State tended to show that on 1 April 1983 at about 3:50 p.m., Agent Handy Gunter, Jr., while working as an undercover agent, purchased two glassine bags of purported heroin from defendant at $25 per bag. Shortly after 4:00 p.m., 1 April 1983, Agent Gunter placed his initials on the two glassine bags, delivered them to Agent Malcolm McLeod for submission to the State Bureau of Investigation's Chemical Laboratory for analysis. Agent McLeod sealed the two glassine bags in a manilla envelope which he delivered to the S.B.I. laboratory by placing the manilla envelope with its contents into Agent John Casale's "lock-box." Agent Casale, a forensic chemist with the S.B.I. laboratory, had the only key for the lock box, and evidence placed therein could not be removed without the key. On 13 April 1983, Agent Casale removed the manilla envelope containing the two glassine bags from his lock box and performed two color tests and an infrared test on a sample of the white powder substance contained in one of the glassine bags. From these preliminary tests, Agent Casale formed an opinion of which he was 99% sure that the substance contained heroin. On 13 April 1983, Agent Casale, after performing these preliminary tests and arriving at an opinion that the substance contained heroin, placed a small sample of the white powder substance from the same glassine packet he analyzed into a glass vial, sealed and labeled the vial with the case number. The glass vial was submitted to Agent H. T. Raney for a mass spectrometer analysis. Agent Raney is also a forensic drug chemist with the S.B.I. laboratory and is the mass spectrometer operator for the lab.

On 10 June 1983, Agent Casale received a report from Agent Raney together with the vial he had submitted to him on 13 April 1983. The mass spectrometer graph conclusively indicated that the substance contained in the vial was heroin.

On 28 June 1983, Agent Casale placed the two glassine packets Agent McLeod had placed in his lock box on 13 April 1983 into a manilla envelope which he personally sealed, initialed, prepared for mailing and mailed them to Agent Malcolm McLeod. Agent McLeod received the manilla envelope with its contents on 1 July 1983. Once received on 1 July 1983, the package remained

unaltered and in Agent McLeod's exclusive possession and control.

The manilla envelope, State's Exhibit #1, and the two glassine packets, State's Exhibit #2, were properly identified. Agent Casale was received as an expert in the field of forensic chemistry specializing in the area of the identification and analysis of controlled substances. Over defendant's objection, Agent Casale was allowed to testify that the results of his analysis and an analysis performed by H. T. Raney of a sample from one of the glassine packets showed that it contained heroin. Defendant's motion to strike was denied.

Defendant testified in his own behalf and denied possession or selling the purported controlled substance.

*Attorney General Edmisten, by Assistant Attorney General Henry T. Rosser, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender David W. Dorey, for defendant.*

JOHNSON, Judge.

[1] Agent Casale testified, on direct examination, that in his opinion the substance obtained from the defendant was heroin. He based his opinion on the test results of an infrared test, two color tests and a mass spectrometer analysis. On cross-examination, defendant elicited from Agent Casale that he did not conduct the test performed on the spectrometer, but was testifying to results conducted by Agent Raney. Defendant objected and moved to strike this testimony as inadmissible hearsay, due to the fact Agent Casale had no personal knowledge of the test and was testifying from results of Agent Raney's tests. The State contends that Agent Casale's testimony was not hearsay and properly admissible under the principles articulated by the Supreme Court in *State v. Wade*, 296 N.C. 454, 251 S.E. 2d 407 (1979).

In *Wade*, the Court, after an exhaustive review of past cases, stated:

Although none of these cases[1] articulates any sort of universally applicable rule, the pattern of their holdings supports the following propositions: (1) A physician, as an expert witness, may give his opinion, including a diagnosis, based either on personal knowledge or observation or on *information supplied him by others*, including the patient, if such information is inherently reliable even though it is not independently admissible into evidence. The opinion, of course, may be based on information gained in both ways. (2) If his opinion is admissible the expert may testify to the information he relied on in forming it for the purpose of showing the basis of the opinion. (Emphasis added.)

*Id.* at 462, 251 S.E. 2d at 412. The State contends that these principles should apply to testimony of experts beyond the medical field as well. We agree with the State's contention that the above principles should apply to all persons properly qualified in court as an expert in a particular field. *Accord State v. Powell*, 306 N.C. 718, 295 S.E. 2d 413 (1982); *see also*, Brandis, North Carolina Evidence, sec. 136, p. 542 (2nd rev. ed.).

Applying the above quoted principles, we hold that Agent Casale's opinion based upon the mass spectrometer analysis should have been excluded. The record clearly shows that Agent Casale received the substance purchased from the defendant on 13 April 1983. After conducting his own preliminary tests, he submitted the substance to Agent Raney on 13 April 1983 to perform a mass spectrometer analysis. Agent Raney was not called to testify. Agent Casale testified that the mass spectrometer was broken from February of 1983 until June 1983. The best he could recall was, "it was broken down in February and then it would be up for a couple of days and then down. And then it was down indefinitely until June." Agent Casale further testified that he was not present when the tests were conducted, nor does he know how to operate the mass spectrometer. There was no evidence presented to show when and if the machine was repaired. Agent

---

1. *State v. Alexander*, 179 N.C. 759, 103 S.E. 383 (1920); *Penland v. Coal Co.*, 246 N.C. 26, 97 S.E. 2d 432 (1957); *Seawell v. Brame*, 258 N.C. 666, 129 S.E. 2d 283 (1963); *Cogdill v. Highway Commission*, 279 N.C. 313, 182 S.E. 2d 373 (1971); *State v. DeGregory*, 285 N.C. 122, 203 S.E. 2d 794 (1974); *State v. Bock*, 288 N.C. 145, 217 S.E. 2d 513 (1975).

Casale partially based his opinion that the substance was heroin from a graph produced from the mass spectrometer.

The first issue when an opinion is based in whole or in part on conversations with the patient or others is the admissibility of the opinion (the reliability requirement). *State v. Franks*, 300 N.C. 1, 265 S.E. 2d 177 (1980). In light of the mass spectrometer's condition and the absence of any testimony that it was repaired and properly working, the graph produced by it and relied upon by Agent Casale was not inherently reliable. Our holding today is limited to the facts of this case, for we cannot say that in every case where an analysis is done on a substance by one person and the results of that analysis forms the basis of an opinion of an expert that it should be excluded as not reliable.

Even though we have concluded it was error for the trial court to admit Agent Casale's opinion based upon the graph he received, we do not believe it was prejudicial error.

> Such prejudice will normally be deemed to be present, in cases relating to rights arising other than under the Federal Constitution, *only* "when there is reasonable possibility that, had the error in question not been committed, a different result would have been reached at trial. . . ."

*State v. Powell*, 306 N.C. 718, 295 S.E. 2d 413 (1982) (quoting *State v. Easterling*, 300 N.C. 594, 268 S.E. 2d 800 (1980) ). There was ample competent evidence elicited from Agent Casale that the substance in question was heroin. He testified that he personally conducted three individual tests on the substance, two color tests and an infrared test. Based upon these three tests, he was of the opinion that the substance tested was heroin. Asked if his test was conclusive, Agent Casale testified he was 99% sure. Agent Casale's tests were performed on the substance prior to the tests conducted on the mass spectrometer by Agent Raney. In light of Agent Casale's opinion, from competent evidence, along with other evidence presented by the State to show defendant's guilt, we fail to find that had the error not occurred the result would have been different. Therefore, we hold the trial court's erroneous admission of the testimony was not prejudicial.

[2]  Defendant next assigns as error the trial court's denial of his motion to dismiss due to the State's failure to establish a chain of

custody. The thrust of the defendant's argument relates to the interval of time between Agent Casale's submission of the substance to Agent Raney and its return. Defendant does not contest the chain of custody prior to Agent Casale's receipt of the substance. In light of our holding that the test results of Agent Raney were inadmissible, but the test results performed by Agent Casale were admissible, the chain of custody needed to be established was the time interval prior to Agent Casale's initial receipt of the substance. Defendant concedes that the State has proved that the substance purchased from the defendant was properly secured, transported to the S.B.I. laboratory and received by Agent Casale. We therefore dismiss defendant's contention.

In the trial of the defendant, we find

No prejudicial error.

Chief Judge HEDRICK and Judge COZORT concur.