STATE OF NORTH CAROLINA v. JOHN RICHARD GARY

No. 856SC326

(Filed 3 December 1985)

1. **Constitutional Law § 60; Grand Jury § 3.3— discrimination in selection of grand jury foreman—dismissal of indictments not required**

    Evidence that every grand jury foreman in the county for the past thirty years has been white and that 47% of the county population is black did not require dismissal of the indictments against a black defendant on equal protection grounds since the role of the foreman of a North Carolina grand jury is essentially ministerial and not so significant to the administration of justice that discrimination in the appointment of that office impugns the fundamental fairness of the process itself so as to undermine the integrity of the indictments.

2. **Conspiracy § 6; Narcotics § 4— conspiracy to sell and deliver cocaine—sufficiency of evidence**

    The State's evidence presented a jury question as to the existence of a conspiracy to sell and deliver cocaine where it tended to show that an ac-

quaintance of an undercover agent took the agent to defendant's pool hall to get cocaine; the agent gave the acquaintance money and the acquaintance went into the pool hall and bought cocaine from defendant; and during the transaction, the agent sat in a car directly outside the pool hall and defendant sat at a pool hall window where he could see the acquaintance get out of and return to the car. The jury could logically infer from such evidence that defendant knew that the acquaintance was not buying the cocaine for his own use.

3. **Conspiracy § 5.1; Criminal Law § 79.1— statements by co-conspirator after conspiracy ended—inadmissible hearsay**

   In a prosecution for conspiracy to sell and deliver cocaine, the trial court erred in admitting hearsay statements made by a co-conspirator a week after the conspiracy had ended that he could get "two or three pieces" of cocaine from defendant. N.C.G.S. 8C-1, Rule 801(d)(E).

4. **Criminal Law § 73.3— statement made by another—reason for subsequent conduct**

   A statement made to an undercover agent by another that defendant's pool hall was the place to get cocaine was admissible to explain why the agent and the other person went to the pool hall in the first place.

5. **Conspiracy § 5.1; Criminal Law § 79— co-conspirator's statement after cocaine delivery—admissibility**

   A co-conspirator's statement immediately following delivery of cocaine that it was good stuff because he had had some earlier in the day occurred close enough in time to the criminal acts to be admissible.

6. **Criminal Law § 79.1— evidence concerning trial of non-testifying codefendant—inadmissibility**

   The State's evidence in a prosecution for narcotics offenses that a non-testifying codefendant had been charged and tried for narcotics offenses violated the rule barring evidence of convictions of non-testifying codefendants even though evidence of the result of the codefendant's trial was not introduced.

7. **Criminal Law § 50.1; Narcotics § 3.3— expert testimony—lab results—tests performed by another**

   The opinion of an S.B.I. lab analyst that mass spectra of residues found in defendant's pool hall indicated the presence of cocaine was not inadmissible because the tests were performed by someone else. N.C.G.S. 8C-1, Rule 705.

APPEAL by defendant from *Freeman, Judge.* Judgments entered 19 October 1984 in Superior Court, HALIFAX County. Heard in the Court of Appeals 16 October 1985.

Defendant was indicted on charges of conspiracy to sell and deliver cocaine, possession of cocaine with intent to sell and deliver and selling and delivering cocaine, and maintaining a business for use and sale of controlled substances. The State's evi-

dence tended to show that undercover agent Clarence Cox asked an acquaintance, Eddie Wilkins, where they could get some cocaine. Wilkins took Cox to defendant's pool hall. Cox gave Wilkins money, and Wilkins went in. Defendant was seated at a table near a plate glass window in the pool hall, a low one-story structure, about 15 feet from Cox. It was nighttime but a light was on inside the pool hall. Cox observed Wilkins talk with defendant; defendant motioned to another man in the room who gave Wilkins a package. Wilkins gave defendant the money. Wilkins came out and gave Cox the package which contained cocaine. At the end of the undercover operation four weeks later, a search of the pool hall resulted in the discovery of drug paraphernalia and numerous items containing drug residue.

Defendant relied on an alibi defense. The jury found him guilty as charged (the sale and delivery charge was voluntarily dismissed). From a judgment imposing sentences totalling twelve years, defendant appeals.

*Attorney General Thornburg by Assistant Attorney General Richard L. Griffin for the State.*

*Glover & Petersen by James R. Glover for the defendant-appellant.*

EAGLES, Judge.

I

[1] Defendant moved unsuccessfully before trial to dismiss the indictments against him, alleging violation of his constitutional right to equal protection. Defendant, a black, showed that every grand jury foreman in Halifax County for the past thirty years has been white. According to the 1980 census, 47% of Halifax' population is black. These facts are undisputed, and form the basis for defendant's first assignment of error.

Both sides rely principally on two recent decisions of the United States Supreme Court. *Rose v. Mitchell,* 443 U.S. 545, 61 L.Ed. 2d 739, 99 S.Ct. 2993 (1979); *Hobby v. United States,* --- U.S. ---, 82 L.Ed. 2d 260, 104 S.Ct. 3093 (1984). Although sharply divided on this issue the *Rose* court reaffirmed the long-established rule that a criminal conviction of a black person could not stand, without regard to any showing of actual legal preju-

dice, where the underlying indictment was handed down by a grand jury from which black people were excluded by reason of race. 443 U.S. at 551-57, 61 L.Ed. 2d at 746-50, 99 S.Ct. at 2997-3001. The court decided on the merits that the petitioners had failed to show a *prima facie* case of racial discrimination. Since it reached that result, the *Rose* court simply assumed that discrimination in the selection of a grand jury foreman would also require reversal. *Id.* at 551 n. 4, 61 L.Ed. 2d at 747, n. 4, 99 S.Ct. at 2998, n. 4. Standing alone, *Rose* might seem to require reversal here.

In *Hobby*, however, the issue here was more directly addressed. There defendant, a white male, challenged the selection of the grand jury foreman on due process grounds, alleging that systematic exclusion of blacks and women deprived him of fundamentally fair proceedings. The court rejected this argument, relying heavily on the difference between the role of the Tennessee grand jury foreman in *Rose* and the federal grand jury foreman in *Hobby*, and stating that *Rose* must be read in light of its facts. In Tennessee, the foreman is appointed as a thirteenth juror at the sole discretion of the judge from the population as a whole, as opposed to appointment from the grand jury itself after impanelling of randomly selected jurors. The Tennessee foreman has independent investigative powers, can order the issuance of subpoenas, and, since an indictment unendorsed by the foreman is "fatally defective," possesses virtual veto power over the indictment process. *Hobby*, --- U.S. at ---, 82 L.Ed. 2d at 268-69, 104 S.Ct. at 3098. *See Rose v. Mitchell, supra* (White, J., dissenting) ("vital importance" of Tennessee foreman). The federal foreman's responsibilities, by comparison, are "essentially clerical": administering oaths, maintaining records, and signing indictments. The foreman has no veto power since the absence of the foreman's signature on an indictment is a mere technical irregularity. The federal foreman must be selected from among the grand jurors. The court concluded from these facts that the impact of the grand jury foreman on the federal criminal justice system is minimal, and that if the grand jury from which he or she is selected is properly constituted, there can be little effect on the fairness of the prosecution. *Hobby*, --- U.S. at ---, 82 L.Ed. 2d at 266, 104 S.Ct. at 3097.

In North Carolina, the foreman is appointed by the trial judge from among the grand jurors after they have been impaneled. G.S. 15A-622(e). The foreman exercises only limited powers: he or she "presides" over all hearings and may administer oaths, G.S. 15A-623(b); he or she may excuse jurors, but only for particular sessions and in limited numbers, G.S. 15A-622(d); and he or she must communicate the desire of the grand jury as a whole to examine new witnesses, G.S. 15A-626(b). The foreman is charged with returning all bills of indictment and presentments, G.S. 15A-628(c), but this function involves no protected rights of defendants. *State v. Childs*, 269 N.C. 307, 152 S.E. 2d 453 (1967), *death penalty vacated*, 403 U.S. 948, 29 L.Ed. 2d 859, 91 S.Ct. 2278 (1971). It has been held, under former G.S. 15-141, that failure to return bills of indictment strictly according to statute was not prejudicial. *State v. Reep*, 12 N.C. App. 125, 182 S.E. 2d 623 (1971). Finally, although the foreman by statute must indicate which witness(es) were sworn and examined, G.S. 15A-623(c), and must sign the indictment, G.S. 15A-644(a)(5), the absence of these endorsements will not render an otherwise valid indictment fatally defective. *State v. Avant*, 202 N.C. 680, 163 S.E. 806 (1932); *State v. Midyette*, 45 N.C. App. 87, 262 S.E. 2d 353 (1980). With the exception of presiding, these statutory duties appear entirely ministerial. Clearly these duties in no way approach the level of authority exercised by the Tennessee foreman in *Rose*.

Defendant argues that the North Carolina foreman exercises enormous influence in comparison to the federal foreman by emphasizing his duty to preside over the grand jury's hearings. In the federal system, the prosecutor may be present in the grand jury room, Fed. R. Crim. P. 6(d), and although formal control of the proceedings technically rests with the foreman, the foreman frequently allows the prosecutor to conduct the examination. 8 Moore's Federal Practice Section 6.04[1] at 6-79 (2d rev. ed. 1985). In North Carolina, on the other hand, the prosecutor is excluded from the grand jury room. G.S. 15A-623(d). Defendant contends that this necessarily magnifies the foreman's role, since the foreman must consult with the prosecutor about the indictment and the relevant law and the witnesses. However, the usual practice is that the proposed indictment is presented to the grand jury drafted in full with the witnesses' names filled in, leaving the grand jury foreman the essentially ministerial task of checking

the appropriate boxes indicating which witnesses were called and signing the bill upon approval of a true bill by the grand jury. The judge, not the prosecutor, advises the grand jury on the applicable law. G.S. 15A-624(b). Other less formal procedures may have developed, but they do not appear in this record. We do not believe these few, essentially clerical functions constitute a significant difference between the roles of the federal and the North Carolina grand jury foreman.

Therefore, following *Hobby*, we conclude that defendant has failed to show any prejudicial impact on his rights. The role of the foreman of a North Carolina grand jury is not "so significant to the administration of justice that discrimination in the appointment of that office impugns the fundamental fairness of the process itself so as to undermine the integrity of the indictment." --- U.S. at ---, 82 L.Ed. 2d at 266, 104 S.Ct. at 3097. This court has only recently decided *State v. Cofield*, 77 N.C. App. 699, 336 S.E. 2d 439 (1985), on similar grounds: there we held that not only did defendant fail to show a significant pattern of discrimination but that even if he had, again relying on *Hobby*, the ministerial nature of the position made any effect insubstantial at best.

Based on the foregoing discussion, we conclude that the court did not err in denying defendant's motion. The first assignment is therefore overruled.

II

[2] Defendant was indicted for conspiring with Wilkins to sell and deliver cocaine. The State proceeded, and the court instructed, on the theory that defendant and Wilkins formed a criminal agreement to supply Cox with cocaine. Only the single transaction in the pool hall was proved. Defendant was also convicted of possession of cocaine with intent to sell (at some point the separate substantive count of felony sale of cocaine was voluntarily dismissed). Defendant now contends that the evidence did not suffice to establish a conspiracy.

We note that since the two convictions involved are possession with intent to sell and conspiracy to sell and deliver, "Wharton's Rule," under which a conspiracy count merges with a substantive offense which by definition requires at least two peo-

ple to commit it, *see State v. Branch*, 288 N.C. 514, 220 S.E. 2d 495 (1975), *cert. denied*, 433 U.S. 907, 53 L.Ed. 2d 1091, 97 S.Ct. 2971 (1977), does not apply. Federal cases, which hold that a single buyer-seller transaction cannot constitute a conspiracy, *see United States v. DeLutis*, 722 F. 2d 902 (1st Cir. 1983), also do not apply. As the case was presented to the jury, the conspiracy, if any, was the agreement of defendant and Wilkins to transfer cocaine to Cox.

A conspiracy is an unlawful agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means. *State v. Bindyke*, 288 N.C. 608, 220 S.E. 2d 521 (1975). It is the unlawful agreement that constitutes the crime; under North Carolina law, no overt acts need be proven to establish a conspiracy. *State v. Allen*, 57 N.C. App. 256, 291 S.E. 2d 341 (1982). The defendant's contact with the co-conspirators need not be extensive or of long duration. *See id.* The conspiracy may be shown by circumstantial evidence. *State v. LeDuc*, 306 N.C. 62, 291 S.E. 2d 607 (1982). Ordinarily the existence of a conspiracy is a jury question. *State v. Rozier*, 69 N.C. App. 38, 316 S.E. 2d 893, *cert. denied*, 312 N.C. 88, 321 S.E. 2d 907 (1984).

We conclude that there was at least a jury question here as to the existence of a conspiracy. Taken in the light most favorable to the State, the evidence showed that Wilkins knew he could get cocaine from defendant, that Cox asked for some, that Wilkins agreed with defendant on a transfer to Cox and that the transfer was effectuated. On similar facts, we recently reached the same result. *State v. Caldwell*, 68 N.C. App. 488, 315 S.E. 2d 362, *disc. rev. denied*, 312 N.C. 86, 321 S.E. 2d 901 (1984). The only real difference in the operative facts in *Caldwell* was that defendant and the supplier (the two co-conspirators) went away together for thirty minutes, returning with the drugs. While the longer interval may have made a stronger case, the length of time between the agreement and the delivery were matters for the jury to consider. Similarly, the evidence that Cox feigned indifference to the events in the pool hall was for the jury to consider; the evidence showed that Cox sat in the car directly outside the pool hall and that defendant was sitting where he could see Wilkins get out of and return to the car. The jury could logically infer that defendant knew that Wilkins was not buying for his own use. While the

question was close, we conclude that the court ruled correctly and overrule this assignment.

## III

[3]  Defendant next assigns error to the admission of statements of Wilkins as testified to by Cox. In essence, he argues that the conspiracy did not exist (if it did at all) until Wilkins met defendant in the pool hall, and terminated upon delivery of the cocaine to Cox. Thus the statements were not "during the course and in furtherance of the conspiracy" as required by G.S. 8C-1, R. Ev. 801(d)(E). (The State does not contend, nor does the evidence suggest, that a larger ongoing conspiracy existed. *Compare State v. Rozier, supra.*) Statements made prior to or subsequent to the conspiracy are not admissible under this exception. *See United States v. Tombrello,* 666 F. 2d 485 (11th Cir.), *cert. denied,* 456 U.S. 994, 73 L.Ed. 2d 1291, 102 S.Ct. 2279 (1982); *State v. Conrad,* 275 N.C. 342, 168 S.E. 2d 39 (1969).

Cox testified that one week after the purchase, he went with Wilkins to the pool hall. Defendant objected and argued extensively on the record that any hearsay statements should not be admitted since the conspiracy had ended. The court initially sustained the objection, but the prosecution nevertheless persisted and elicited, over defendant's objection, Cox' testimony that Wilkins told him on this later occasion that he could get "two or three pieces" of cocaine from defendant. No drug purchase transaction took place. Admission of this hearsay testimony was error. *Tombrello; compare State v. Smith,* 48 N.C. App. 402, 269 S.E. 2d 262 (1980) (subsequent statements properly admitted where large ongoing drug operation). It served no legitimate purpose, other than to suggest a disposition to deal in drugs. *See State v. Willis,* 309 N.C. 451, 306 S.E. 2d 779 (1983). The conspiracy shown by the evidence had long since ended; nothing in Cox' and Wilkins' relationship suggested that this later event was connected to the first transaction. No other evidence of Wilkins' relationship, if any, with defendant came before the jury. On this record, we think that the error was prejudicial and requires a new trial.

## IV

We address briefly defendant's remaining contentions that may arise on retrial.

A

**[4]**   Cox also testified about a statement by Wilkins, made before the initial visit to the pool hall, that defendant's place was the place to get cocaine. While this statement may not have occurred during the course of the alleged conspiracy, it was admissible to explain why Cox and Wilkins went to the pool hall in the first place. *See State v. McDonald*, 23 N.C. App. 286, 208 S.E. 2d 915 (1974).

B

**[5]**   Immediately following delivery of the cocaine, while Cox and Wilkins were still in front of the pool hall, Wilkins told Cox that it was good stuff because he had had some earlier in the day. While technically the conspiracy may have ended moments before with the actual delivery, when a conspiracy ends for the purposes of R. Ev. 801(d)(E) is a question of fact for the trial court. *United States v. Papia*, 409 F. Supp. 1307 (E.D. Wis. 1976), *aff'd*, 560 F. 2d 827 (7th Cir. 1977). Ordinarily, the conspiracy ends with the attainment of its criminal objectives, but precisely when this occurs may vary from case to case. *See United States v. Silverstein*, 737 F. 2d 864 (10th Cir. 1984). From this record, it appears to us that the statement occurred close enough in time to the criminal acts themselves to be admissible.

C

**[6]**   The State introduced evidence that Wilkins had been charged and tried for narcotics offenses, but did not introduce evidence of the result of the prosecution. The State argues that since the result of the trial was not divulged, the "clear rule" barring evidence of convictions of non-testifying co-defendants does not apply. *See State v. Rothwell*, 308 N.C. 782, 303 S.E. 2d 798 (1983). We are not persuaded. The policies underlying the rule, (1) that an individual defendant's guilt must be determined solely on the basis of the evidence presented *against that defendant* and (2) that the introduction of evidence of charges against co-defendants deprives a defendant of the right to cross examination and confrontation, *Id.* at 785-86, 303 S.E. 2d at 801, apply equally to evidence that they were charged and evidence that they were tried. Wilkins' criminal activity was adequately described for the benefit of the jury; no purpose was served by informing the jury

that he had been tried, other than to suggest that he had also been convicted, and by inference that defendant should receive the same treatment. This evidence should not have been admitted.

D

Defendant assigns error to certain arguments of the prosecutor. We conclude that no prejudicial error occurred. The prosecutor did not so "torture" the sense of the record as to render the argument improper. *State v. Earnhardt*, 56 N.C. App. 748, 290 S.E. 2d 376, *aff'd in relevant part*, 307 N.C. 62, 296 S.E. 2d 649 (1982).

E

[7] Defendant assigns error to the admission of the opinion of an SBI lab analyst that mass spectra of residues found in the pool hall indicated the presence of cocaine, on the ground that the tests were performed by someone else. In order to be a proper basis for expert opinion, such test results, if otherwise inadmissible, must be "of a type reasonably relied upon by experts in the particular field." G.S. 8C-1, R. Ev. 703; W. Blakey, Examination of Expert Witnesses in North Carolina, 61 N.C.L. Rev. 1, 20-32 (1982) (equivalence with "inherently reliable" standard). When testifying, the expert need not identify the basis of the opinion testimony beforehand, absent a specific request. G.S. 8C-1, R. Ev. 705. Defendant did not challenge the technique of mass spectrometry itself in the trial court, nor does he do so here. It appears to be generally recognized as reliable. *See United States v. Distler*, 671 F. 2d 954 (6th Cir.), *cert. denied*, 454 U.S. 827, 70 L.Ed. 2d 102, 102 S.Ct. 118, *reh'g denied*, 454 U.S. 1069, 70 L.Ed. 2d 604, 102 S.Ct. 619 (1981); *People v. DeZimm*, 112 Misc. 2d 753, 447 N.Y.S. 2d 585 (1981), *aff'd*, 102 A.D. 2d 633, 479 N.Y.S. 2d 859 (1984); *Bostic v. State*, 173 Ga. App. 494, 326 S.E. 2d 849 (1985). He does not argue that the expert herself was not qualified to rely on the test data to give opinion testimony. *See State v. Hunt*, 305 N.C. 238, 287 S.E. 2d 818 (1982) (must be specific request for qualification). Nothing else appearing, the fact that the expert did not perform the tests herself does not require exclusion of the evidence. R. Ev. 705. While the question is not squarely before us at this time, we believe a party who fails to request the specific basis for ex-

pert testimony at trial under R. Ev. 705 should have difficulty sustaining a hearsay objection on appeal.

*State v. Tripp*, 74 N.C. App. 680, 329 S.E. 2d 710 (1985), relied on by defendant, is clearly distinguishable. There it was held error to admit evidence of mass spectrographs where there was (1) substantial evidence that the machine which produced the data used as the basis of opinion testimony was not functioning correctly throughout the period when the tests were run, and (2) no evidence that the machine's problems had been corrected. Here, however, the expert's testimony clearly indicated that the machine had been replaced with a new machine, and nothing suggested that the new machine did not work properly. Moreover, the expert's other tests were consistent with the presence of cocaine. This assignment is without merit.

Defendant argues that the factors found in aggravation of his sentence were based on improper evidence. It is clear that there was sufficient evidence to support each factor.

CONCLUSION

For prejudicial error in the admission of hearsay evidence, there must be a new trial.

New trial.

Judges WHICHARD and COZORT concur.