STATE OF NORTH CAROLINA v. THOMAS WAYNE BATCHELOR

No. COA02-484

(Filed 6 May 2003)

### 1. Discovery— defendant's statements to informant—not timely disclosed

The prosecutor's failure to timely disclose the substance of defendant's statements to a confidential informant did not compel suppression of the evidence where the substance of the statements was disclosed prior to trial. However, the trial court retained the discretion to issue a sanction for the State's failure to comply with the discovery rules. N.C.G.S. § 15A-903(a)(2).

### 2. Discovery— no unfair surprise—confidential informant's statement admitted

The purpose of discovery was achieved, and the trial court did not abuse its discretion by denying a motion in limine to suppress the testimony of a confidential informant about statements made to her by defendant although the substance of the statements were not timely disclosed to defendant, where the court held a voir dire, made findings supported by the evidence, and concluded that defendant was not unfairly surprised.

### 3. Drugs— transporting cocaine—sufficiency of evidence

There was sufficient evidence of an agreement between defendant and another person to transport cocaine and the trial court correctly denied defendant's motion to dismiss a charge of conspiracy to traffick in cocaine by transportation.

### 4. Constitutional Law— right to remain silent—detective's answer—not plain error

Admission of a detective's testimony that defendant had not wanted to waive his rights and was not questioned was not plain error where the evidence against defendant was substantial, the

prosecutor did not comment directly on defendant's failure to testify, and defendant was not cross-examined about his invocation of his constitutional right to remain silent.

**5. Appeal and Error— invited error—right to remain silent invoked—cross-examination**

Any error was invited where defense counsel cross-examined a detective about defendant's invocation of his right to remain silent.

**6. Evidence— defendant's failure to testify—curative instruction—not required ex mero motu**

The trial court was not required to provide a curative instruction without a request from defendant where a witness remarked on defendant's failure to testify during her cross-examination and the court sustained the objection and struck the testimony.

**7. Evidence— charges against coconspirator—admission not plain error**

Testimony that a cocaine defendant's alleged coconspirator was charged with trafficking should not have been admitted, but the error did not rise to the level of plain error because it is unlikely that the jury inferred defendant's guilt from evidence that his codefendant had been charged with similar crimes.

**8. Criminal Law— deliberations—court's inquiry into jury division**

The trial judge did not coerce the jury in a cocaine prosecution by asking the numerical division of the jurors and encouraging them to try to reach a unanimous verdict. The inquiry was made at the end of the day, is a natural break in deliberations, and the judge stated clearly that he did not want to know the direction in which the jury was leaning.

**9. Criminal Law— unanimous verdict—instructions**

A trial judge's instructions on reaching a unanimous verdict were not coercive where the instructions achieved a proper balance between reminding the jurors of their duty and encouraging them not to surrender their own convictions; the court never indicated that the jurors would be forced to deliberate until they could agree or that their inability to reach a verdict would result in a waste of time; and the court's instructions closely followed N.C.G.S. § 15A-1235.

STATE v. BATCHELOR

[157 N.C. App. 421 (2003)]

Appeal by defendant from judgments entered 4 October 2001 by Judge J. B. Allen, Jr. in Wake County Superior Court. Heard in the Court of Appeals 11 February 2003.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Lorrin Freeman, for the State.*

*George B. Currin for defendant-appellant.*

HUNTER, Judge.

Thomas Wayne Batchelor ("defendant") appeals from convictions of conspiracy to traffic in cocaine by transportation, trafficking in cocaine by transportation, and maintaining a vehicle which is used for unlawfully keeping or selling controlled substances. For the reasons set forth herein, we find no prejudicial error.

The State's evidence tended to show that Melissa Watts ("Ms. Watts"), a confidential informant ("CI") hoping to receive a more lenient sentence for her guilty plea to trafficking in ecstasy, provided information to the Raleigh Police Department that led to defendant's arrest on 1 June 2001. The day prior to defendant's arrest, Ms. Watts contacted Detective Donald Bowes ("Detective Bowes") and informed him that defendant had agreed to sell her two ounces of cocaine. The exchange was scheduled to occur around 3:00 p.m. on 1 June 2001 at the Burger King located in Beacon Plaza Shopping Center off of New Bern Avenue. Upon receiving this information from Ms. Watts, Detective Bowes met with his supervisor and arranged for several detectives and uniformed officers with marked vehicles to participate in the apprehension of defendant. On 1 June 2001, defendant called Ms. Watts shortly after he had left the location where he had obtained the cocaine and notified her that he was on his way and was driving a silver Mercury Sable. Ms. Watts then relayed this information to Detective Bowes. Subsequently, Ms. Watts rode in a police van with Sergeant Hurst and Officer Carswell to the shopping center where the transaction was scheduled to occur. When defendant arrived in the general vicinity, he called Ms. Watts on her cell phone. Ms. Watts observed defendant's vehicle and pointed it out to the detectives. Ms. Watts identified defendant as the driver of the vehicle and observed another passenger in the vehicle. Soon thereafter, Officer D. L. Bond ("Officer Bond"), a uniformed drug enforcement officer with the Raleigh Police Department, followed the identified vehicle and eventually performed a traffic stop. The stop and subse-

quent arrest were predicated in part upon defendant's driving a motor vehicle with a fictitious license plate tag.

The officers performed pat-down searches of defendant and Mr. Harris but found nothing. Mr. Harris was placed in Officer Bond's police vehicle and defendant was placed in another patrol car. Defendant and Mr. Harris were then transported to the police station for a more thorough search and questioning. Shortly after arriving at the police station, Officer Bond conducted a thorough search of his patrol car and discovered two plastic bags filled with a white powdery substance, later determined to be powder cocaine. The bags were found under the seats in the area where Mr. Harris had been sitting. The total weight of the cocaine found was 81.2 grams. Defendant presented no evidence.

Defendant was charged in true bills of indictment with conspiracy to traffic in cocaine by transportation, trafficking in cocaine by possession, trafficking in cocaine by transportation, and maintaining a vehicle for the purpose of keeping or selling controlled substances. A jury found defendant not guilty of trafficking in cocaine by possession but guilty of all other charges. Defendant was sentenced to thirty-five to forty-two months imprisonment and ordered to pay a fine of $50,000.00 for the conspiracy to traffic in cocaine conviction. For the crimes of trafficking in cocaine by transportation and misdemeanor maintaining a vehicle, the trial court sentenced defendant to thirty-five to forty-two months imprisonment, such sentence to run at the expiration of the term of imprisonment imposed for the conspiracy conviction. Defendant appeals.

I.

[1] Defendant initially contends the trial court erred in allowing Ms. Watts, the CI, to testify for the State because the prosecutor did not provide defense counsel with the substance of the oral statements defendant made to Ms. Watts by noon on the Wednesday preceding trial, as required under N.C. Gen. Stat. § 15A-903(a)(2) (2001). We disagree.

N.C. Gen. Stat. § 15A-903(a)(2) requires the prosecutor

[t]o divulge, in written or recorded form, the substance of any oral statement relevant to the subject matter of the case made by the defendant, regardless of to whom the statement was made, within the possession, custody or control of the State, the exist-

ence of which is known to the prosecutor or becomes known to him prior to or during the course of trial . . . . If the statement was made to a person other than a law-enforcement officer and if the statement is then known to the State, the State must divulge the substance of the statement no later than 12 o'clock noon, on Wednesday prior to the beginning of the week during which the case is calendared for trial. If disclosure of the substance of defendant's oral statement to an informant whose identity is or was a prosecution secret is withheld, the informant must not testify for the prosecution at trial.

In the instant case, there was a clear violation of this statute since the prosecutor did not provide defense counsel with the substance of defendant's statements to Ms. Watts until the Friday prior to the week defendant's case was calendared for trial and the substance of these statements were never provided "in written or recorded form." *See id.* What sanctions, if any, to impose for a prosecutor's noncompliance with discovery rules is a question addressed to the sound discretion of the trial court. *State v. East,* 345 N.C. 535, 481 S.E.2d 652 (1997). We are also mindful that "the purpose of discovery under our statutes is to protect the defendant from unfair surprise by the introduction of evidence he cannot anticipate." *State v. Payne,* 327 N.C. 194, 202, 394 S.E.2d 158, 162 (1990).

Defendant asserts that it was mandatory rather than permissive for the trial court to exclude Ms. Watts' testimony from trial due to the prosecutor's violation of discovery rules. In support of this contention, defendant relies on the last sentence of N.C. Gen. Stat. § 15A-903(a)(2) which reads, "[i]f disclosure of the substance of defendant's oral statement to an informant whose identity is or was a prosecution secret is withheld, the informant must not testify for the prosecution at trial." Defendant argues that the trial court did not have discretion in determining what, if any sanctions to issue since this provision provides a mandatory remedy for the State's failure to disclose a defendant's oral statements made to a CI. Defendant has not cited, nor have we found, any cases in which our Courts have addressed the specific issue before us of whether the provision upon which defendant relies requires the trial court to suppress the CI's testimony at trial when the State has failed to divulge the substance of defendant's statements within the time deadlines prescribed by the statute, but nevertheless divulged such information prior to trial. Therefore, this is an issue of first impression. We conclude that since defendant was provided with the substance of his statements made to

STATE v. BATCHELOR

[157 N.C. App. 421 (2003)]

Ms. Watts prior to trial, the trial court is not required to suppress the informant's testimony but maintains discretion to determine what sanction, if any, to issue for the State's failure to comply with the discovery rules.

[2] We further conclude that the trial court did not abuse its discretion in denying defendant's motion *in limine* to prevent Ms. Watts from testifying. The record shows that the trial court held an extensive hearing on whether Ms. Watts' testimony was admissible. A preview of the evidence on *voir dire* was given in which both parties had the opportunity to examine Ms. Watts and her attorney, Hart Miles, and the trial court heard legal arguments from both sides. The court found that the State presented to defendant voluntary discovery evidenced by a letter dated 16 August 2001 before the trial in October 2001. The discovery letter notified defendant that he made "a relevant oral statement discoverable under N.C.G.S. 15A-903(a)." The provided discovery included a felony investigation report

> which indicated that the officers received information from a confidential informant (CI), that [defendant] was supposed to deliver some cocaine to an unknown person in Raleigh, North Carolina at Burger King; that the officers set up surveillance at this location and observed the suspect in the vehicle described by the CI and that there was another individual in the car with him. . . .

Further, the court found that Mr. Miles told defense counsel on the Monday prior to the week that the trial was calendared, that he was representing the CI in this case and that on Tuesday prior to the week that the trial was calendared, he told defense counsel that the CI would be testifying in this case. The prosecutor informed defense counsel on Friday prior to the week of trial that Ms. Watts would be testifying and the substance of Ms. Watts' testimony. The trial court additionally found that if defendant had requested a continuance prior to the impaneling of the jury on the grounds of unfair surprise concerning the substance of statements made by defendant to the CI, the court would have continued the case. These findings are all supported by the evidence. We conclude based on these findings that defendant was not unfairly surprised by the introduction of Ms. Watts' testimony. Therefore, the purpose of discovery under our statutes was accomplished. *See Payne*, 327 N.C. at 202, 394 S.E.2d at 162. Accordingly, we conclude the trial court did not abuse its discretion in admitting Ms. Watts' testimony.

II.

**[3]** Defendant next argues the trial court erred in denying defendant's motion to dismiss the charge of conspiracy to traffic in cocaine by transportation based on the insufficiency of the evidence. Defendant specifically contends the State presented insufficient evidence showing that defendant had entered into an agreement with Mr. Harris to transport twenty-eight grams or more of cocaine.

When reviewing a motion to dismiss, the trial court must determine "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). When considering a motion to dismiss, the trial court must view the evidence in the light most favorable to the State. *State v. Smith*, 121 N.C. App. 41, 44, 464 S.E.2d 471, 473 (1995).

"A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner." *State v. Morgan*, 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991). A conspiracy may be established by showing a mutual, implied understanding; the State need not prove an express agreement. *Id.* Moreover, "an agreement or understanding for the purposes of conspiracy may be inferred from the conduct of the parties." *State v. Merrill*, 138 N.C. App. 215, 220, 530 S.E.2d 608, 612 (2000). "In fact, proof of a conspiracy 'may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy.' " *State v. Harris*, 145 N.C. App. 570, 579, 551 S.E.2d 499, 505 (2001) (quoting *State v. Whiteside*, 204 N.C. 710, 712, 169 S.E. 711, 712 (1933)), *appeal dismissed and disc. review denied*, 355 N.C. 218, 560 S.E.2d 146 (2002).

In the case *sub judice*, Ms. Watts testified that she and defendant had arranged to meet so that defendant could sell her two ounces of cocaine. On the day the sale was to occur, defendant contacted Ms. Watts by phone to inform her that he had the cocaine and was on his way to meet her. When defendant arrived at the designated location, Mr. Harris was in the car with him. Defendant and Mr. Harris were eventually stopped by Officer Bond. At that point, Mr. Harris was patted down and placed in the back seat of Officer Bond's patrol vehicle.

After being transported to the police department, defendant was thoroughly searched and no controlled substances were recovered. However, two plastic bags of cocaine were later discovered in Officer Bond's patrol car which was used to transport Mr. Harris to the police department. The cocaine was found in the area of the patrol car in which Mr. Harris had been sitting. Officer Bond testified that he had done a thorough search of his patrol vehicle at the beginning of his shift and had not found any cocaine during the search, that he maintained the vehicle locked when it was unaccompanied, and that Mr. Harris was the only person who was placed in the back seat of his patrol car on the day in question. When viewing this evidence in the light most favorable to the State, we conclude that a reasonable trier of fact could infer that defendant and Mr. Harris had an agreement or understanding to unlawfully transport more than twenty-eight grams of cocaine for the purpose of selling it to Ms. Watts. *See* N.C. Gen. Stat. § 90-95(h)(3) (2001). We therefore conclude the trial court did not err in denying defendant's motion to dismiss the charge of conspiracy to traffic in cocaine by transportation.

### III.

**[4]** Defendant also asserts that the trial court erred in admitting Detective Bowes' testimony regarding defendant's exercise of his Fifth Amendment right to remain silent. The prosecutor asked defendant, "[a]nd did [defendant] make a statement downtown?" To which Detective Bowes responded, "I advised [defendant] of his rights. He did not want to waive his rights. So other than pertinent information needed for the arrest warrant, he was not questioned." Defendant contends that it was incumbent upon the trial court to intervene *ex mero motu* to prevent the jury from considering this testimony. We will review this assignment for plain error since defendant failed to object to the admission of this testimony. *See* N.C.R. App. P. 10(c)(4); *State v. Cummings*, 346 N.C. 291, 488 S.E.2d 550 (1997).

Defendant correctly asserts that a defendant's exercise of his constitutionally protected right to remain silent may not be used against him by the State at trial. *State v. Ladd*, 308 N.C. 272, 302 S.E.2d 164 (1983). However, even when a defendant objects, he is not entitled to a new trial due to this error if the State shows that the error was harmless beyond a reasonable doubt. *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997); N.C. Gen. Stat. § 15A-1443(b) (2001).

Where, as in this case, a defendant has failed to object, the defendant has the burden of showing that the error constituted

plain error, that is, (i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial.

*Bishop*, 346 N.C. at 385, 488 S.E.2d at 779. Assuming *arguendo* that the trial court erred in admitting Detective Bowes' testimony, we conclude defendant has failed to show plain error. The evidence against defendant was substantial. In addition, there is no evidence in the record that the prosecutor directly commented on defendant's failure to testify or that defendant was cross-examined about his invocation of his constitutional right to remain silent. Any violation of defendant's rights was *de minimus*, and defendant has not satisfied his heavy burden of demonstrating plain error.

**[5]** Defendant also assigns error to the admission of Detective Bowes' testimony on cross-examination by defense counsel concerning defendant's invocation of his right to remain silent. The challenged testimony was elicited by the defense counsel and defense counsel did not object or make a motion to strike. Therefore, defendant invited any error. Defendant cannot now complain of this invited error. *See State v. Jennings*, 333 N.C. 579, 430 S.E.2d 188 (1993).

IV.

**[6]** Defendant next argues the trial court erred in failing to provide a curative instruction to the jury in response to Ms. Watts' testimony regarding defendant's failure to testify. Ms. Watts testified on defense counsel's cross-examination that she was meeting defendant because he was bringing her two ounces of cocaine. Ms. Watts then stated, "[i]f [defendant] doesn't agree with what I'm saying, why doesn't [defendant] come defend himself." Defense counsel objected and moved to strike this testimony. The trial court sustained the objection and granted the motion to strike. On appeal, defendant asserts that the trial court, acting on its own, without a request from defense counsel at trial, should have provided a curative instruction to the jury that Ms. Watts' testimony was improper and should be disregarded and that defendant's decision not to testify could in no way be considered by the jury as evidence of his guilt.

It is well settled that "[a]dverse comments on a defendant's failure to testify at trial are impermissible under North Carolina law, Constitution of North Carolina, Article I, Section 23, N.C.G.S. § 8-54, and under the Fifth and Fourteenth Amendments to the Constitution of the United States[.]" *State v. Castor*, 285 N.C. 286, 291, 204 S.E.2d

848, 852-53 (1974). Defendant relies on *State v. Soloman*, 40 N.C. App. 600, 253 S.E.2d 270 (1979), to support his contention that the court erred in failing to provide a curative instruction. However, defendant's reliance is misplaced because this case is distinguishable. *Soloman* involved a prosecuting attorney's comments on the defendant's failure to testify. In this situation,

> [w]hen there is an objection to such prohibited statements . . . it is "the duty of the court not only to sustain objection to the prosecuting attorney's improper and erroneous argument but also to instruct the jury that the argument was improper with prompt and explicit instructions to disregard it. [If] no proper curative instruction [is] given, the prejudicial effect of the argument requires a new trial."

*Id.* at 603, 253 S.E.2d at 273 (quoting *State v. Monk*, 286 N.C. 509, 518, 212 S.E.2d 125, 132 (1975)). In this case, a witness, not the prosecuting attorney, commented on defendant's failure to testify. We have failed to find any authority to support defendant's argument that when a *witness* makes remarks regarding the defendant's failure to testify, that, in addition to sustaining an objection and granting a motion to strike, the trial court is required to provide a curative instruction without a request from the defendant. Therefore, this assignment of error is overruled.

V.

**[7]** Defendant next contends the trial court erred in allowing the prosecutor to elicit testimony from Detective Bowes that the alleged co-conspirator, Mr. Harris, had been charged with trafficking in cocaine by transportation and trafficking in cocaine by possession. Detective Bowes stated that he did not recall whether Mr. Harris was charged with conspiracy as well. Defendant concedes that he failed to object to this testimony. Therefore, we review for plain error.

The "clear rule" is that evidence of convictions, guilty pleas, and pleas of nolo contendere of non-testifying co-defendants is inadmissible unless introduced for a legitimate purpose, i.e., used for a purpose other than evidence of the guilt of the defendant on trial. *State v. Rothwell*, 308 N.C. 782, 303 S.E.2d 798 (1983). This Court has previously determined that this rule applies equally to evidence that co-defendants were charged and tried. *State v. Gary*, 78 N.C. App. 29, 337 S.E.2d 70 (1985). This Court reasoned that:

The policies underlying the rule, (1) that an individual defendant's guilt must be determined solely on the basis of the evidence presented *against that defendant* and (2) that the introduction of evidence of charges against co-defendants deprives a defendant of the right to cross examination and confrontation, . . . apply equally to evidence that they were charged and evidence that they were tried.

*Id.* at 37, 337 S.E.2d at 76. Although in this case, there was only evidence that a co-defendant was charged with similar crimes as defendant but no evidence that the co-defendant was tried, we nevertheless find *Gary* controlling. Therefore, we conclude the trial court erred in admitting evidence that Mr. Harris was charged with similar offenses as defendant. However, this error did not amount to plain error.

Defendant has not satisfied his heavy burden of showing, "(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." *Bishop*, 346 N.C. at 385, 488 S.E.2d at 779. Detective Bowes testified that the charges were still pending against Mr. Harris and thus, there was no testimony that Mr. Harris had been found guilty, pleaded guilty, or pleaded nolo contendere to the charges. It is unlikely that the jury inferred defendant's guilt from the evidence that his co-defendant had been charged with similar offenses. Therefore, defendant is not entitled to a new trial based on this error.

VI.

**[8]** Defendant next contends the trial court erred by asking the jury its numerical division on the issue of guilt and in subsequently providing instructions to the jury, encouraging them to go back and try to reach a unanimous verdict on all charges. We review for plain error due to defendant's failure to object to the trial court's inquiry and instruction.

After the jury had deliberated for approximately four hours and fifteen minutes, the trial judge asked for a numerical split on the issue of guilt without an indication of which direction, guilty or not guilty, the jury was leaning. Defendant argues that such inquiry is *per se* reversible error since it violated his Constitutional rights to trial by jury and due process of law. In support of his contention, defendant relies on *Brasfield v. United States*, 272 U.S. 448, 71 L. Ed. 345 (1926), in which the United States Supreme Court held that the trial court's inquiry regarding the jury's numerical division was reversible error.

However, as defendant concedes, both the North Carolina Supreme Court and this Court have held that the rule in *Brasfield* is not binding upon our State Courts because the ruling in *Brasfield* was based on its supervisory power over the federal courts and not on a defendant's Constitutional rights. *State v. Fowler*, 312 N.C. 304, 322 S.E.2d 389 (1984); *State v. Yarborough*, 64 N.C. App. 500, 307 S.E.2d 794 (1983). This Court has also held "that such an inquiry is not inherently coercive or violative of the North Carolina Constitution's Article I, § 24 guarantee of the right to a trial by jury." *Id.* at 502, 307 S.E.2d at 795.

Since there is no federal or state constitutional basis requiring the adoption of a *per se* rule, this Court must review the totality of the circumstances in order to determine whether the trial judge's inquiry was coercive or in any way affected the jury's decision. *See id.* In this case, the inquiry was made at the end of a day, a natural break in the jury's deliberations, and the judge clearly stated that he did not want to know which direction, guilty or not guilty, the jury was leaning. Therefore, we find no coercion and no error in the trial judge's inquiry.

**[9]** Defendant also assigns plain error to the trial court's instructions regarding the jury's duty to deliberate with a view toward reaching a unanimous agreement because defendant asserts that these instructions were coercive. The trial court provided the following instructions pursuant to N.C. Gen. Stat. § 15A-1235(c) (2001):

All right. Ladies and gentlemen, I'm going to give you some additional instructions this morning and ask that you go back and try to reach a unanimous verdict in the other three charges.

As I have already told you, in order to return a verdict, all twelve jurors must agree to a verdict of guilty or not guilty. And this is the law and each and every one of you told me that you could follow it and apply the law. But this is the law of North Carolina that I want to give you.

Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement if it can be done without violence to individual judgment. Each juror must decide the case for himself or herself, but only after an impartial consideration of the evidence with his or her fellow jurors. In the course of deliberation, a juror should not hesitate to reexamine his or her own views and change his or her own opinion if convinced it is

erroneous. And no juror should surrender his or her honest convictions as to the weight or the affect of the evidence solely because of the opinion of his or her fellow jurors or for the mere purpose of returning a verdict.

So having given you those instructions and that is the law of North Carolina, I'm going to hand the verdict sheets back to the foreman and ask that you go back and continue with deliberation with a view towards reaching a unanimous verdict either guilty or not guilty on the other three charges. . . .

The trial court has discretion in determining whether to give an instruction pursuant to N.C. Gen. Stat. 15A-1235(c). *State v. Fernandez*, 346 N.C. 1, 484 S.E.2d 350 (1997). "[I]n deciding whether a court's instructions force a verdict or merely serve as a catalyst for further deliberations, an appellate court must consider the circumstances under which the instructions were made and the probable impact of the instructions on the jury." *State v. Peek*, 313 N.C. 266, 271, 328 S.E.2d 249, 253 (1985). This Court must consider the totality of the circumstances in determining whether these instructions were coercive. *See State v. Dexter*, 151 N.C. App. 430, 566 S.E.2d 493, *aff'd*, 356 N.C. 604, 572 S.E.2d 782 (2002).

We conclude the trial court's instructions achieved a proper balance between reminding the jurors of their duty to deliberate fully and encouraging them not to surrender their own convictions after full reflection. The court never indicated to the jurors that they would be forced to deliberate until they could agree or that their inability to reach a verdict would result in a waste of time or resources. The trial court's instructions closely followed the language of N.C. Gen. Stat. § 15A-1235 and did not contain any element of coercion that would warrant a new trial. Therefore, defendant's argument lacks merit.

Defendant offers no argument in support of his remaining assignments of error. Accordingly, they are deemed abandoned. N.C.R. App. P. 28(a), 28(b)(6).

No prejudicial error.

Judges BRYANT and ELMORE concur.