STATE OF NORTH CAROLINA v. DANNY RAY McDONALD

No. COA11-104

(Filed 4 October 2011)

**1. Evidence—crack cocaine—analysis—standards—chemist testifying**

The trial court did not abuse its discretion in allowing the State's expert witness to testify about the results of his chemical analysis of a substance seized from defendant. Defendant provided no legal authority establishing that ASCLD/LAB accreditation is required when the forensic chemist who conducted the analysis of the alleged controlled substance testifies at trial. Any doubts as to the validity of the witness's analysis or his conclusions should have been addressed during defendant's cross-examination of the expert witness.

**2. Evidence—drug analysis—standards—lab analyst testifying**

The trial court did not err in its admission of the expert's laboratory report into evidence where the testing analyst testified at trial. N.C.G.S. § 8-58.20(b) applies when the analyst does not testify and is not controlling here.

Appeal by defendant from judgment entered 25 August 2010 by Judge Theodore S. Royster in Cabarrus County Superior Court. Heard in the Court of Appeals 31 August 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Kathleen N. Bolton, for the State.*

*James H. Monroe for defendant-appellant.*

HUNTER, Robert C., Judge.

Danny Ray McDonald ("defendant") appeals his conviction for felony possession of cocaine. Defendant argues the trial court committed plain error in allowing the State's expert witness, a forensic chemist, to testify to the results of his chemical analysis of the alleged controlled substance seized from defendant, and in admitting the expert's laboratory report into evidence. Defendant contends the results of the chemical analysis were not admissible, because the testing was not performed by an accredited laboratory and the procedures utilized were not sufficiently reliable. After careful review, we disagree.

## Background

The evidence at trial tended to establish the following facts: On 24 May 2008, Sergeant Joe O'Donnell of the Concord Police Department was on patrol in Concord, North Carolina when he observed defendant driving a motorcycle that did not have mirrors. Sergeant O'Donnell followed defendant and observed the motorcycle wobble as defendant was driving. Attempting to stop defendant, Sergeant O'Donnell activated the blue lights on his patrol car, but defendant did not respond. Sergeant O'Donnell then activated his siren and defendant travelled approximately one quarter of a mile before stopping.

While informing defendant why he had been stopped, Sergeant O'Donnell noticed an odor of burnt crack cocaine emanating from defendant's person. Sergeant O'Donnell asked defendant if he had smoked any crack cocaine and defendant denied doing so. When asked if he had been around anyone smoking crack cocaine, defendant stated that he had been at a party the night before where someone had smoked crack cocaine. Sergeant O'Donnell then asked defendant if he had any illegal drugs or weapons on his person. Defendant responded he did not, held out both of his hands and said, " '[Y]ou can check me.' "

Upon searching defendant, Sergeant O'Donnell found a glass tube, which he understood to be commonly used for smoking crack cocaine, and three small white rocks. Defendant stated he had purchased the items for someone else. Sergeant O'Donnell then placed

defendant under arrest for possession of narcotics. The Concord Police Department mailed the three confiscated rocks to NarTest, LLC ("NarTest") in Morrisville, North Carolina for chemical analysis.

The Cabarrus County Grand Jury indicted defendant for possession of cocaine and for having attained habitual felon status. Defendant filed a motion to suppress all evidence resulting from Sergeant O'Donnell's stop and search of defendant, arguing the sergeant did not have reasonable suspicion to stop defendant, did not have probable cause to search defendant, and did not have the right to ask defendant for his consent to be searched. Following a hearing on the matter, the trial court denied the Motion.

Defendant's case came on for trial during the 23 August 2010 Criminal Session of Superior Court of Cabarrus County. The State called as a witness H.T. Raney, Jr. ("Raney"), a forensic chemist employed with NarTest who analyzed the three white rocks seized from defendant. Raney, qualified as an expert in forensic chemistry by the trial court, testified as to the tests and procedures utilized in his analysis of the seized substance, and concluded it was a cocaine base, Schedule II controlled substance.

The jury found defendant guilty of possession of cocaine and defendant pled guilty to attaining habitual felon status. The trial court sentenced defendant to a minimum of 107 months imprisonment and a maximum of 138 months imprisonment. Defendant gave notice of appeal in open court.

## Discussion

[1] Defendant argues the trial court committed plain error in allowing Raney to testify as an expert forensic chemist and in admitting Raney's opinion and laboratory report into evidence because the testing of the alleged controlled substance was not conducted by an accredited laboratory and was not sufficiently reliable. We disagree.

We will not disturb a trial court's decision to admit expert testimony absent a finding that the trial court abused its discretion, such that the trial court's decision was arbitrary and not the result of a reasoned decision. *State v. Crandell,* ___ N.C. App. ___, ___, 702 S.E.2d 352, 357 (2010), *disc. rev. denied,* ___ N.C. ___, 710 S.E.2d 34 (2011). Furthermore, we note that because defendant did not object to Raney's testimony regarding the results of his forensic analysis or make a specific objection to the introduction of Raney's laboratory

report,[1] defendant must establish not only that the trial court erred, but that the error amounted to plain error. N.C. R. App. P. 10(a)(4) (2011); *State v. Locklear*, 172 N.C. App. 249, 259, 616 S.E.2d 334, 341 (2005). To establish plain error, defendant must show "the error was so fundamental that, absent the error, the jury probably would have reached a different result." *State v. Jones*, 355 N.C. 117, 125, 558 S.E.2d 97, 103 (2002). We conclude the trial court did not err in admitting Raney's testimony or his laboratory report, and therefore, did not commit plain error.

Rule 702(a) of the North Carolina Rules of Evidence provides that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 702(a) (2009).[2] As our Supreme Court discussed in *Howerton v. Arai Helmet, Ltd.*, our case law has established a three-prong inquiry by which a trial court may determine the admissibility of expert testimony: "(1) Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony? (2) Is the witness testifying at trial qualified as an expert in that area of testimony? (3) Is the expert's testimony relevant?" 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004) (citations omitted).

---

1. The record reveals that upon the State's introduction of Raney's laboratory report, defendant requested the trial court note his "previous objection" to the report, and the court admitted the report over defendant's objection. The record does not reveal the basis of defendant's objection. On appeal, defendant argues no "specific objection" was made to the introduction of the laboratory report and seeks plain error review. As it is not the duty of this Court to supplement defendant's brief with argument, *Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 606, 615 S.E.2d 350, 358, *writ denied, rev. denied*, 360 N.C. 63, 623 S.E.2d 582 (2005), we review for plain error.

2. The General Assembly recently amended Rule 702(a) to read as follows:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, *or otherwise, if all of the following apply: (1) The testimony is based upon sufficient facts or data. (2) The testimony is the product of reliable principles and methods. (3) The witness has applied the principles and methods reliably to the facts of the case.*

2011 N.C. Sess. Law ch. 283, § 1.3 (effective Oct. 1, 2011) (emphasis added). The amended statute only applies to actions commenced on or after 1 October 2011 and does not affect our analysis. *Id.*

As to the first prong of the inquiry, determining whether an expert's "method of proof is sufficiently reliable as an area for expert testimony," the trial court may consider an expert's testimony as to the reliability, or may take judicial notice of the matter, or a combination of both. *Howerton,* 358 N.C. at 459, 597 S.E.2d at 686–87. In the absence of precedence on the reliability of the method of proof, "the trial court should generally focus on the following nonexclusive 'indices of reliability' . . . 'the expert's use of established techniques, the expert's professional background in the field, the use of visual aids . . . and independent research conducted by the expert.' " *Id.* at 460, 597 S.E.2d at 687 (quoting *State v. Pennington,* 327 N.C. 89, 98, 393 S.E.2d 847, 853 (1990)).

Furthermore, the *Howerton* Court noted this assessment is a "foundational inquiry" into the adequacy of the expert's methodology and does not require the reliability of the evidence to be conclusively established before it is admitted into evidence. *Id.* Therefore, once the trial court determines the expert's methods are sufficiently reliable, any doubt as to the "quality of the expert's conclusions go to the weight of the testimony rather than its admissibility." *Id.* at 461, 597 S.E.2d at 688. Any perceived deficiencies in the evidence may be brought forth during cross-examination. *See Hairston v. Alexander Tank & Equip. Co.,* 310 N.C. 227, 244, 311 S.E.2d 559, 571 (1984) ("It is the function of cross-examination to expose any weaknesses in [expert] testimony . . . .").

In the present case, defendant does not contest the reliability of Raney's qualifications as an expert in forensic chemistry, the relevancy of Raney's testimony, or that the tests he performed in conducting his analysis are generally accepted in the scientific community. Rather, defendant argues that Raney's testing *procedures, policies,* and *protocols* were not established by the State to be reliable or generally accepted in the scientific community. Specifically, defendant notes, there was no testimony that the tests were performed in accordance with rules or procedures adopted by the State Bureau of Investigation ("SBI"), or that the tests were conducted by a laboratory accredited by the American Society of Crime Laboratory Directors/Laboratory Accreditation Board ("ASCLD/LAB"). Defendant further argues that because NarTest is not accredited by the ASCLD/LAB or any accrediting organization, it is impossible to know whether the forensic testing conducted at NarTest was sufficiently reliable for the evidence to be admissible. We disagree.

While defendant does not contest Raney's qualifications as a forensic chemist, a brief review of his background is helpful for the context of our discussion. At trial, Raney testified that he holds a bachelor's degree in chemistry and biology, and has trained at the "SBI academy" and the "Drug Enforcement Agency in Quantico." Prior to being hired at NarTest in 2004, Raney was a special agent at the SBI for over 25 years and was assigned to the drug laboratory for the identification of controlled and non-controlled substances. Raney testified that while he was employed at the SBI he worked on the identification of evidence in over 50,000 cases and that he had testified, as an expert, on the analysis of controlled substances more than 900 times in state, federal, and military proceedings.

Raney acknowledged that NarTest is not accredited by ASCLD/ LAB, but testified it is licensed by the State of North Carolina to perform analysis of controlled substances and by the Drug Enforcement Administration ("DEA") to perform analytical testing on Schedule I through IV controlled substances. Raney described the process he follows at NarTest when handling a package containing a substance for testing. Raney also described the tests he performed on the evidence at issue in this case, as well as the equipment and procedures used to perform those tests.[3] Raney testified, in detail, as to what each test entailed and the measures he employed to ensure the accuracy of each test; this included the calibration of the equipment and the use of "blank" samples to clean the instruments and prevent cross-contamination between samples of evidence. Significantly, the procedures Raney used at NarTest were the same procedures he used since 1977 while working at the SBI; testing methods that are accepted by the forensic science community worldwide. Additionally, Raney testified that while working at the SBI, he was certified on the same equipment, and trained to perform the same tests, that he utilized at NarTest. Thus, contrary to defendant's assertion, Raney testified to the procedures he used in his analysis of the evidence seized from defendant. We conclude, through Raney's testimony as to his professional background and use of established forensic techniques, the State met its burden of establishing " 'indices of reliability,' " as contemplated in *Howerton*, sufficient to justify the trial court's admission of Raney's testimony.

3. According to Raney's testimony, NarTest has developed a drug-testing device for use by law enforcement agencies. This Court recently noted the "NarTest machine" had not yet been approved for the identification of controlled substances by the State or any agency of the State. *State v. Meadows*, 201 N.C. App. 707, 711, 687 S.E.2d 305, 308, *writ denied, rev. denied*, 364 N.C. 245, 699 S.E.2d 640 (2010). However, the NarTest machine was not utilized by Raney in his analysis of the evidence in this case.

Although the NarTest laboratory is not accredited by ASCLD/LAB or another accrediting organization, defendant has provided no legal authority establishing that such accreditation is required when the forensic chemist who conducted the analysis of the alleged controlled substance testifies at trial. Here, the testing analyst's testimony established the laboratory in which the analysis was conducted is licensed both by the State and the DEA to perform analytical testing on Schedule I through IV controlled substances; the tests performed on the substance seized from defendant were the same tests performed at the SBI laboratory when identifying controlled substances; the tests were performed on the same equipment that is used by the SBI laboratory; and the testing methodology used by the analyst is accepted by the forensic community worldwide. Any doubts as to the validity of Raney's analysis or his conclusions should have been addressed during defendant's cross-examination of the expert witness. Defendant's argument is overruled.

**[2]** Next, Defendant argues the trial court committed plain error in admitting Raney's laboratory report into evidence as it was inadmissible pursuant to section 8-58.20(b) of our General Statutes. Section 8-58.20(b) states, in part, that "[a] forensic analysis, to be admissible under this section, shall be performed in accordance with rules or procedures adopted by the [SBI], or by another laboratory accredited by the [ASCLD/LAB] for the submission, identification, analysis, and storage of forensic analyses." N.C. Gen. Stat. § 8-58.20(b) (2009), *amended by* 2011 N.C. Sess. Laws ch. 19, § 7 (effective March 31, 2011) (requiring accreditation for laboratories performing forensic analysis, if the results are to be admitted without the testimony of the testing analyst).

Defendant's reliance on section 8-58.20(b), however, is misplaced as subsection (a) of the statute indicates the provisions of the statute apply to the admission of laboratory reports in criminal prosecutions where the analyst that prepared the report does not testify at trial. *See* N.C. Gen. Stat. § 8-58.20(a) ("In any criminal prosecution, a laboratory report of a written forensic analysis . . . may be admissible in evidence without the testimony of the analyst who prepared the report in accordance with the requirements of this section."). In the present case, the testing analyst testified at trial and was subject to cross-examination by defendant. Thus, section 8-58.20(b) does not control the admission of Raney's laboratory report and defendant's argument is overruled.

## Conclusion

In summary, we conclude the trial court did not abuse its discretion in allowing the State's expert witness to testify as to the results of his chemical analysis of the substance seized from defendant, and did not err in its admission of the expert's laboratory report into evidence. Consequently, defendant's argument that these decisions by the trial court amounted to plain error is without merit.

No error.

Judges STEELMAN and McCULLOUGH concur.