An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-289

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

STATE OF NORTH CAROLINA

v.                                    Guilford County
                                      No. 10CRS078622

TYRONE ORLANDO QUICK


Appeal by defendant from judgment entered 3 August 2012 by Judge John O. Craig, III in Guilford County Superior Court. Heard in the Court of Appeals 9 October 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General J. Aldean Webster, III, for the State.*

> *Anna S. Lucas for defendant-appellant.*


HUNTER, Robert C., Judge.


Tyrone Orlando Quick ("defendant") appeals from judgment sentencing him to 70 to 84 months imprisonment after being convicted on one count of possession with intent to sell or deliver heroin and one count of trafficking heroin. On appeal, defendant argues that: (1) the trial court committed plain error when it admitted a chemical analyst's testimony that did not meet the standards under amended North Carolina Rule of Evidence

702 or the previous standard under *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 597 S.E.2d 674 (2004), and (2) defendant's trial counsel's failure to object to the chemical analyst's identification of the substance was in violation of defendant's right to effective assistance of counsel under the Sixth Amendment. After careful review, we find no error.

**Background**

The evidence presented at trial tended to establish the following facts: On 27 May 2010, Detective Curtis Cheeks of the High Point Police Department Vice and Narcotics Unit ("Detective Cheeks") obtained a search warrant for the residence located at 500 Forest Street in High Point, North Carolina. Later that same morning, Detective Cheeks, with the support of other officers, executed the search warrant. While searching the residence, an officer discovered a substance he believed to be heroin located in the living room mini blinds. Detective Cheeks also found several cellophane wrappers, stamped baggies, the stamp itself, and a digital scale.

The evidence found at the scene was gathered, processed, and sealed in envelopes pursuant to the quality control measures of the High Point Police Department. The substance believed to be heroin was later found to weigh 4.82 grams. After collection of the evidence, Natasha Burns, the owner of the house, and defendant, who was visiting at the time the search warrant was

executed, were arrested and transported to the High Point Police Department. The substance gathered at the crime scene was later delivered in its sealed package to Trot Raney ("Raney"), an employee of the NarTest Company, to conduct analytical testing and identification of the substance.

On 7 September 2010, defendant was indicted on charges of trafficking in a controlled substance and possession with intent to manufacture, sell, and deliver a controlled substance. The matter came on for trial in Guilford County Superior Court on 31 July 2012. Raney was tendered by the State as an expert in the field of forensic chemistry, specializing in the analysis and identification of controlled substances. He was subsequently certified as an expert in the field with no objection from defendant. Following his certification as an expert, Raney testified as to his methods and procedures as follows:

> Q: All right. And what was the purpose of your examination?
>
> A: To determine the content of the plastic bag that I received from High Point.
>
> Q: How did you go about doing that for State's Exhibit 4.
>
> A: Well, first thing I did was to verify that the package was sealed correctly on the initialed package. Then after that I removed the contents to verify that what was listed as being contained in this envelope were, in fact, what was there. And then I removed the material and weighed the contents of it, recorded that weight.

Q. And then what do you do after you weigh[ed] it?

A. Then I took and crushed up a bunch of the material so I could get a homogenous mixture of it. After doing that weight I ran two color tests, the crystal test and a mass spec test.

Q. And as a result of those tests and your analysis, were you able to form a specific opinion about what the substance contained in what's been marked as State's Exhibit 4 is or contained?

A. Yes, ma'am.

Q. And what is that opinion?

A. It's a schedule one controlled substance[,] heroin.

No objection was made by defendant as to the admissibility of Raney's testimony.

The jury later found defendant guilty on one count of trafficking heroin and one count of possession with intent to sell or deliver heroin. Defendant was sentenced to a minimum of 70 months imprisonment and a maximum of 84 months imprisonment. Defendant gave oral notice of appeal in open court.

## Discussion

### I. Admission of Expert Testimony

Defendant argues that the trial court committed plain error when it admitted the chemical analyst's testimony that did not meet the standards under North Carolina Rule of Evidence 702.

Specifically, defendant contends the chemical analyst's testimony met neither the reliability standard set forth under Rule 702(a) as amended on 1 October 2011 nor the former Rule 702(a) as interpreted by our Supreme Court in *Howerton*. We disagree.

"[A] trial court's ruling on the qualifications of an expert or the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion." *Howerton*, 358 N.C. at 458, 597 S.E.2d at 686. Since defendant failed to object to the admission of the chemical analyst's testimony during trial, we review his challenge to the admission for plain error. *See State v. Mendoza*, 206 N.C. App. 391, 395, 698 S.E.2d 170, 174 (2010). "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (quotation marks omitted).

The rule governing the admissibility of expert testimony in North Carolina prior to 1 October 2011 was expressed in N.C. Gen. Stat. § 8C-1, Rule 702(a) which stated "[i]f scientific, technical or other specialized knowledge will assist the trier

of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify . . . ." N.C. Gen. Stat. § 8C-1, Rule 702(a) (2011) (amended October 1, 2011). Based on this statute, our Supreme Court in *Howerton*, 358 N.C. at 458, 597 S.E.2d at 686, devised a three-part test for the admissibility of expert testimony which has trial courts ask: "(1) Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony? (2) Is the witness testifying at trial qualified as an expert in that area of testimony? (3) Is the expert's testimony relevant?"

The North Carolina General Assembly later amended Rule 702(a), adding language similar to the corresponding federal rule of evidence. *State v. Gamez,* __ N.C. App. __, __, 745 S.E.2d 876, 878 (2013). As amended, Rule 702(a) states that expert testimony is admissible if "all of the following apply: (1) [t]he testimony is based upon sufficient facts or data[;] (2) [t]he testimony is the product of reliable principles and methods[;] (3) [t]he witness has applied the principles and methods reliably to the facts of the case." N.C. Gen. Stat. § 8C-1, Rule 702(a) (2012). The provisions of amended Rule 702(a) became effective 1 October 2011 and "appl[y] to actions *arising on or after* that date." *Gamez,* __ N.C. App. at __, 745 S.E.2d at 878; 2011 N.C. Sess. Law ch. 283, § 4.2.

Defendant first argues that the trial court erred by admitting the expert's testimony under amended Rule 702(a). However, this Court recently held that the proper trigger date for applying amended Rule 702(a) is not the date of the trial but "the date that the bill of indictment was filed." *Gamez,* __ N.C. App. at __, 745 S.E.2d at 878-79. Here, defendant was indicted on 7 September 2010, which is before 1 October 2011, when amended Rule 702(a) came into effect. Therefore, we apply *Howerton's* three-prong test interpreting Rule 702(a) as it existed prior to 1 October 2011 to assess the trial court's admission of evidence in this case, not amended Rule 702(a).

Defendant argues that even if amended Rule 702(a) does not apply here, the expert's testimony was inadmissible under the *Howerton* test. Specifically, defendant argues that the expert's proffered method of proof was not sufficiently reliable as an area for expert testimony because it did not provide a thorough explanation of the handling of the substance, the acceptability of the measures in the scientific community, or whether the procedures were the same as those Raney used while at the SBI. We find that defendant's argument is without merit.

To satisfy the first prong of the *Howerton* test, whether the expert's proffered method of proof is sufficiently reliable, "a court may look to testimony by an expert specifically relating to the reliability, may take judicial notice, or may

use a combination of the two." *Howerton*, 358 N.C. at 459, 597 S.E.2d at 687 (quotation marks omitted). When a court is faced with unproven scientific methods or techniques, it should "generally focus on the following nonexclusive 'indices of reliability'[:] the expert's use of established techniques, the expert's professional background in the field, the use of visual aids . . . and independent research conducted by the expert." *Id.* at 460, 597 S.E.2d at 687 (citations omitted). However, "when specific precedent justifies recognition of an established scientific theory or technique advanced by an expert, the trial court should favor its admissibility, provided the other requirements of admissibility are likewise satisfied." *Id.* at 459, 597 S.E.2d at 687. When there is an absence of new evidence challenging methods previously held to be reliable, there is no need for the trial court to re-establish the reliability of such methods in every case. *Taylor v. Abernethy*, 149 N.C. App. 263, 274, 560 S.E.2d 233, 240 (2002) (holding that handwriting analysis testimony was admissible because numerous courts held it was reliable in past cases).

In support of his argument, defendant relies on *State v. McDonald*, __ N.C. App. __, 716 S.E.2d 250 (2011), involving the same expert, Raney, testifying as to his methods of identifying a controlled substance. In *McDonald*, Raney provided expert testimony held by this Court to be sufficiently reliable where

he testified as to the precautionary measures taken during the tests, the acceptance of the methods in the scientific community, and his use and training with the equipment used to perform the tests. *Id.* at __, 716 S.E.2d at 254.

In the present case, Raney's testimony does not rise to the level of detail provided in *McDonald*. Raney did not thoroughly explain the precautionary methods he employed in performing the tests nor did he testify as to the acceptance of the methods in the scientific community. Raney stated only that he verified the package was correctly sealed, verified the contents, weighed the contents, crushed the substance into a homogenous mixture, and then performed a series of tests on the substance. These tests included two color tests: a crystal test and a mass spec test. Raney did not explain how either test worked; he merely said that he conducted them.

In addition to naming the specific tests he used, Raney also testified that he was previously employed as an agent for the SBI and attended multiple training sessions in the field of drug analysis and identification. This training included courses in infrared spectrometry and mass spec training, which were the tests used to identify the substance in this case. Raney testified that he has worked over 50,000 cases during his career and has been certified as an expert in drug analysis and identification in over 900 state, federal, and military cases.

Raney used methods to test the substance that are not novel or unproven but have been allowed by numerous courts in the past as means of identifying controlled substances. *See, e.g., State v. Hough*, 202 N.C. App. 674, 680-82, 690 S.E.2d 285, 290-91 (2010) (finding no error where the expert analyst conducted a color test and mass spec test to identify a controlled substance); *State v. Tripp*, 74 N.C. App. 680, 684, 329 S.E.2d 710, 713 (1985) (finding no error where Raney had conducted two color tests, an IR test and mass spec test, to identify a controlled substance), *disc. review denied*, 314 N.C. 335, 333 S.E.2d 496 (1985). Thus, Raney's tests in this case were not in need of additional "indices of reliability" because, unlike novel scientific techniques, his methods have repeatedly been found to be reliable. *See Howerton*, 358 N.C. at 459-60, 597 S.E.2d at 687. Since Raney used proven methods and defendant made no objection challenging the reliability of these methods, we find that the trial court did not need to re-establish their reliability.

Accordingly, we conclude the trial court did not abuse its discretion in allowing the expert testimony, and we find no error in the trial court's admission of Raney's testimony identifying the substance as heroin into evidence. Since there was no error, there could not have been plain error. *State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468 (1986).

## II. Assistance of Counsel

Next, defendant argues that he was denied his Sixth Amendment right to the effective assistance of counsel. Specifically, defendant argues that his attorney's failure to object to Raney's expert testimony subjected defendant's case on appeal to the plain error standard, thereby prejudicing defendant. We disagree.

"When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." *State v. Fletcher*, 354 N.C. 455, 481, 555 S.E.2d 534, 550 (2001). To meet this burden, a defendant must satisfy the following two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel . . . was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* (citation omitted). Moreover, "[c]ounsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear." *Id.* at 482, 555 S.E.2d at 551.

In addressing the first prong of the test, defendant

asserts his counsel's performance was deficient because he failed to object to Raney's identification of the substance as heroin. Defendant further contends his attorney's failure to object could not have been a part of any reasonable trial strategy. We disagree.

In actuality, and contrary to defendant's argument, an objection would have caused Raney to give additional testimony as to the reliability of the methods he used, likely bolstering the weight and credibility of his testimony with the jury. Defendant has failed to meet his burden of demonstrating that his attorney's decision not to object to Raney's testimony was not part of a trial strategy to leave open the ability to attack Raney's testing methodology in closing and on appeal. Moreover, as discussed above, the trial court's admission of Raney's testimony was not in error. Thus, because defendant has failed to satisfy the first prong of the test, we find that his argument regarding ineffective assistance of counsel is overruled.

**CONCLUSION**

We conclude that the trial court did not abuse its discretion or err by admitting Raney's testimony. Additionally, defendant has failed to show that his counsel's performance was unconstitutionally deficient. We therefore find no error in the court's judgment.

NO ERROR.

Judges BRYANT and STEELMAN concur.

Report per Rule 30(e).