141 A.3d 1216

STATE OF NEW JERSEY, PLAINTIFF, v.
ROBERT HALLORAN, DEFENDANT.

Superior Court of New Jersey
Law Division
Morris County

Decided August 29, 2014.

382

*Jessica Moses,* Assistant Deputy Public Defender, and *Dolores D. Mann,* Deputy Public Defender, for defendant (*Joseph E. Krakora,* Public Defender, attorney).

*Catherine Broderick,* Supervising Assistant Prosecutor, for defendant (*Fredric M. Knapp,* Morris County Prosecutor, attorney).

WEISENBECK, A.J.S.C. (retired).

This de minimis application implicates the issue of whether, under Megan's Law, a sex offender is obligated to register more than one residence. For the reasons set forth in this opinion, the Court concludes that a secondary residence must be registered and that a failure to do so is not a de minimis violation.

I.  *Background and Procedural History*

On February 28, 1992, defendant was convicted of five counts of Aggravated Sexual Assault and five counts of Endangering the Welfare of a Child. On October 9, 1992, defendant was sentenced to twenty years in the custody of the Department of Corrections

with a period of parole ineligibility of ten years and an additional fifteen years of custody consecutive to the original twenty years. On January 29, 2011, defendant was released from custody.

On September 13, 2010, defendant registered 6 Bunn Road, Hamburg, New Jersey, as his future residence with the Department of Corrections. Defendant never registered his Hamburg residence with local law enforcement.

On February 2, 2011, defendant registered with the Roxbury Police Department and advised that he was residing at the Roxbury Motel. On February 3, 2011, defendant's registering officer confirmed that defendant was residing at the Roxbury Motel. On February 7, 2011, defendant checked out of the Roxbury Motel and did not leave a forwarding address. By March 16, 2011, defendant had moved back into the Roxbury Motel and informed Detective Adam DelGuercio of the Roxbury Township Police Department of said move. On March 16, 2011, DelGuercio informed defendant that there was an arrest warrant for him. On March 16, 2011, defendant was transported to the Morris County Correctional facility in lieu of bail. Defendant was registered at the facility.

Defendant was charged with Failing to Notify Law Enforcement of a Change of Residence, to which he pled guilty on June 11, 2011. Defendant's plea agreement called for the State to recommend a period of probation supervision conditioned on his serving sixty days in the Morris County Correctional Facility. On September 9, 2011, defendant was sentenced to one year of probation supervision with thirty days in the Morris County Correctional facility. Defendant registered 1150 Route 46, Ledgewood (Roxbury Township), New Jersey as his residence. On September 28, 2011, he was released from jail.

When registering and reregistering his residence, defendant acknowledged and signed his *N.J.S.A.* 2C:7-1 registration form, which reads in pertinent part:

In accordance with the provisions of *N.J.S.A.* 2C:7-1, you are required to re-register with the local police department in the town in which you reside and the

town in which you will be moving to *every* time you relocate to an address that is different from the one listed on your previous registration. This must be done 10 days *before* you re-locate. You must also re-register with your local police department either every 90 days or annually, as provided by law. If you are employed at a school, attend a school, or carry on a vocation, you must register with law enforcement agency with jurisdiction over that community. Failure to comply with these requirements will subject you to penalties as set forth in the statute....

Each time defendant registered an address, he also initialed paragraph 3 of the "Registration/Re–Registration/Address Verification Form," which says:

I understand that if I *move*, I must notify the local police department where I am registered, and the police department where I intend to live, at least 10 days before I move. I must then re-register in my new town. Verification of that address is due the year after the re-registration date. I understand that if I move out of New Jersey and then move back to New Jersey, I must re-register within 10 days of returning to this State with the local law enforcement agency in the town where I live. I understand that if I move to another State, I will be subject to any and all laws governing sex offender registration procedures in that State.

On or about September 26, 2011, Lori Crane, defendant's girl-friend, informed Corporal Russell Hatzel of the Mount Olive Police Department that defendant was living in Crane's residence in Budd Lake, New Jersey. On September 29, 2011, Officer Barrier of the Mount Olive Police Department observed defendant leaving the Budd Lake Post Office with Crane and heading towards her home.

On September 30, 2011, defendant called and spoke to Hatzel and set up an appointment at the police station on October 3, 2011. Also during the call, defendant admitted to Hatzel that he had stayed at Crane's home on September 28, 2011. On October 3, 2011, defendant informed Hatzel that he had been staying at Crane's home on-and-off for some time, before admitting that he had been living at Crane's residence since August 22, 2011. Crane confirmed that defendant had been residing at her home since August 22, 2011.

On October 20, 2011, a grand jury indicted defendant on two counts: (1) Failure to Register within the statutorily required period of time between August 22, 2011, and October 3, 2011, in

violation of *N.J.S.A.* 2C:7–2(a)(3), a crime of the third degree; and (2) Failure to Advise of Use of Internet in violation of *N.J.S.A.* 2C:7–2(d)(2), a crime of the fourth degree.

## II. *Standard of Review*

The present motion is governed by *N.J.S.A.* 2C:2–11, which allows for dismissal of the prosecution as a de minimis infraction. It reads as follows:

> The assignment judge may dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the defendant's conduct:
>
> a. Was within a *customary license or tolerance*, neither expressly negated by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;
>
> b. *Did not actually cause or threaten the harm or evil sought to be prevented* by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
>
> c. Presents such other extenuations that *it cannot reasonably be regarded as envisaged by the Legislature in forbidding the offense.* The assignment judge shall not dismiss a prosecution under this section without giving the prosecutor notice and an opportunity to be heard. The prosecutor shall have a right to appeal any such dismissal.
>
> [*N.J.S.A.* 2C:2–11 (emphasis added).]

For purposes of a de minimis motion, the Assignment Judge must assume that the conduct charged actually took place and evaluate only whether the offense is too trivial to warrant prosecution. *See State v. Brown,* 188 *N.J.Super.* 656, 671, 458 *A.*2d 165 (Law Div.1983); *see also State v. Evans,* 340 *N.J.Super.* 244, 249, 774 *A.*2d 539 (App.Div.2001). On that premise, the judge may assert that this conduct, which technically establishes the commission of a crime by defendant, was a trivial matter or did not cause or threaten the result that the criminal statute is designed to prevent. *Ibid.* The question thus becomes what is the risk of harm to which society is exposed by defendant's conduct. *State v. Zarrilli,* 216 *N.J.Super.* 231, 239, 523 *A.*2d 284 (Law Div.1987), *aff'd* 220 *N.J.Super.* 517, 532 *A.*2d 1131 (App.Div.1987). If the Assignment Judge finds that defendant's conduct so charged was insufficient to constitute an offense, he may dismiss

the indictment. *Brown, supra,* 188 *N.J.Super.* at 671, 458 *A.*2d 165.

In *Zarrilli,* the court considered the following factors in evaluating a de minimis application:

(a) Defendant's background, experience and character as indications of whether he or she knew or should have known the law was being violated;

(b) Defendant's knowledge of the consequences of the act;

(c) The circumstances surrounding the offense;

(d) The harm or evil caused or threatened;

(e) The probable impact of the violation on the community;

(f) The seriousness of the punishment;

(g) Possible improper motives of the complainant or prosecutor; and

(h) Any other information which may reveal the nature and degree of culpability.

[*Zarrilli, supra,* 216 *N.J.Super.* at 235, 523 *A.*2d 284.]

■ Furthermore, "the court examines not only the nature of defendant's conduct but also the nature of the attendant circumstances[;] [e]very surrounding fact is entitled to consideration." *State v. Cabana,* 315 *N.J.Super.* 84, 86, 716 *A.*2d 576 (Law Div.1997). The *Cabana* court further stated: "Not all inappropriate behavior leads to criminal liability. There are instances, such as this, where public opinion will be the better judge of conduct. The what, why and how of which may call for an apology, not criminal charges." *Id.* at 89–90, 716 *A.*2d 576.

■ An example of the application of the de minimis statute is found in *State v. Smith,* 195 *N.J.Super.* 468, 480 *A.*2d 236 (Law Div.1984), where the defendant, a full-time student at Trenton State College [now The College of New Jersey], was charged with shoplifting three pieces of Bazooka bubble gum valued at $.15. The Assignment Judge ultimately dismissed the offense as trivial after considering the following factors: (1) the small value of the objects stolen; (2) the fact that the defendant had no prior criminal record; (3) the public embarrassment suffered by the defendant as a result of the misconduct; (4) the damage to his reputation; and (5) the legal expenses he incurred. *Id.* at 474, 480 *A.*2d 236. Moreover, "prior criminal history may be taken into account in determining triviality, particularly where the ruling

called for involves some discretion." *Evans, supra,* 340 *N.J.Super.* at 253, 774 *A.*2d 539. However, the *Evans* court additionally noted, "what is most important is the risk of harm to society of defendant's conduct." *Ibid.*

## III. *Discussion*

Defendant argues that his indictment for failure to register should be dismissed because it is de minimis. Defendant submits that based upon custom, he believed that he was properly registered in Roxbury and thus not required to register in Mount Olive, and relies upon *State v. Nevens,* 197 *N.J.Super.* 531, 535, 485 *A.*2d 345 (Law Div.1984). Defendant contends that registered sex offenders may only register in one town, because the statute "does not provide sex offenders a way to register in two towns, even if they could presumably spend significant time in or live in two places. As such a sex offender must choose which town to register in." Consequently, because he continued to pay rent on his motel unit in Roxbury, where he kept clothing and received mail, he was not required to register in Mount Olive. Defendant also argues that he did not pose any harm to the community because he did not purposefully avoid reregistration and only stayed in Mount Olive a total of nine to twelve nights out of forty-two between August 22, 2011, and October 3, 2011. Defendant further contends that he showed good faith by meeting with Hatzel. Finally, defendant submits that if the Court denies his de minimis application, it should nonetheless dismiss the first count, because he should have been charged with Failure to Notify as to Change of Address, in violation of *N.J.S.A.* 2C:7–2(d), a fourth degree offense, not Failure to Register, a third degree offense.

The State responds that the indictment for failure to register should not be dismissed as de minimis, because defendant's failure to register a residence in Mount Olive falls squarely within *N.J.S.A.* 2C:7–2(a)'s purview. First, the State contends that defendant's "custom" argument must fail, because he signed at least five documents since leaving the Department of Corrections's

custody acknowledging that failure to register could lead to criminal prosecution, and he had been charged with the very same offense less than four months prior to the timeframe for which he is presently charged. Furthermore, the State submits that defendant's reliance on *Nevens* is misplaced and actually supports the State's position. While the court in *Nevens* found that defendant Nevens's charge should be dismissed as de minimis because he was never advised that his conduct—taking pieces of fruit from a buffet table outside the restaurant—was unlawful, in the companion case, defendant Hawkins was informed several times that his conduct—cheating a casino at the slot machine—was illegal, and therefore "was not 'within a customary license or tolerance.'" *Nevens, supra,* 197 *N.J.Super.* at 538, 485 *A.*2d 345. Because defendant here was similarly advised, the State argues that his "custom" argument is unavailing.

Next, the State disagrees that defendant's alleged transgression was merely trivial. It argues that the Legislature intended for Megan's Law and its registration requirements to create a system to track convicted sex offenders so that law enforcement would know of their whereabouts. The State contends that registration is residence-based and that notification is meant to be provided to relevant communities that might encounter the offender, not to residents who merely reside near locations where a defendant receives his mail, stores his clothing and pays rent, but is otherwise absent. The State argues that "someone who lives next door to an apartment where a registrant pays rent, but never appears, is not at risk of being victimized by the defendant. Someone who lives next door to where he spends every day and sleeps almost every night does face this risk." Finally, the State opposes defendant's claim that his alleged registration violation is a fourth degree charge rather than a third degree charge. The State notes that a violation of *N.J.S.A.* 2C:7–2(d), which occurs when an offender fails to register his or her new address, is a crime of the fourth degree, but that *N.J.S.A.* 2C:7–2(a), which occurs when an offender fails to register, is a crime of the third degree and is

applicable whenever an offender fails to meet his registration requirements.

## IV. *Analysis*

### A. *Motion to Dismiss: De Minimis*

■ The questions before the Court are whether defendant's alleged violation was: (1) within customary license or tolerance neither expressly negated by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense; (2) neither a threat to the public nor creation of a threat of public harm; or (3) a situation not envisaged by the Legislature.

■ First, the Court concludes that defendant's conduct was not within the customary license or tolerance. Initially, the Court notes that defendant had previously been incarcerated for a registration offense and had signed at least five acknowledgements detailing his registration responsibilities under the statute. *State v. Nevens, supra,* 197 *N.J.Super.* at 538–39, 485 *A.2d* 345. Furthermore, the Court rejects defendant's premise that the statute does not allow an offender to register more than one residence and thus presents a situation not envisaged by the legislature. *N.J.S.A.* 2C:7–2 provides, in pertinent part, as follows:

a. (1) A person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sex offense as defined in subsection b. of this section shall register as provided in subsections c. and d. of this section.
. . . .
(3) A person who fails to register as required under this act shall be guilty of a crime of the third degree.
. . . .
c. A person required to register under the provisions of this act shall do so on forms to be provided by the designated registering agency as follows:
(1) A person who is required to register and who is under supervision in the community on probation, parole, furlough, work release, or a similar program, shall register at the time the person is placed under supervision or no later than 120 days after the effective date of this act, whichever is later, in accordance with procedures established by the Department of Corrections, the Department of

Human Services, the Juvenile Justice Commission established pursuant to section 2 of P.L.1995, c284 (C.52:17B–170) or the Administrative Office of the Courts, whichever is responsible for supervision;

(2) A person confined in a correctional or juvenile facility or involuntarily committed who is required to register shall register prior to release in accordance with procedures established by the Department of Corrections, the Department of Human Services or the Juvenile Justice Commission and, within 48 hours of release, shall also register with the chief law enforcement officer of the municipality in which the person resides or, if the municipality does not have a local police force, the Superintendent of State Police;

A review of this plain language fails to support defendant's restrictive interpretation. *State v. Gandhi*, 201 *N.J.* 161, 176, 989 *A.*2d 256 (2010) ("In most instances, the best indicator of [legislative intent] is the plain language chosen by the Legislature.").

Even if this language was deemed ambiguous, defendant's interpretation is contrary to the purpose of this legislation. In interpreting a statute, a court should "determine and effectuate the Legislature's intent." *Allen v. V & A Bros., Inc.*, 208 *N.J.* 114, 127, 26 *A.*3d 430 (2011). This analysis must be "guided by the legislative objectives sought to be achieved by the statute." *Shelton v. Restaurant.com, Inc.*, 214 *N.J.* 419, 429, 70 *A.*3d 544 (2013). Applying these principles to the subject statute, it is clear that the Legislature did not restrict the term "residence" to a single residence. The purpose of the Registration and Community Notification Laws, *N.J.S.A.* 2C:7–1 to –11, referred to as Megan's Law, is to protect the community from the dangers of recidivism by sexual offenders. Specifically, our Legislature determined that,

a. The danger of recidivism posed by sex offenders and offenders who commit other predatory acts against children, and the dangers posed by persons who prey on others as a result of mental illness, require a system of registration that will permit law enforcement officials to identify and alert the public when necessary for the public safety.

b. A system of registration of sex offenders and offenders who commit other predatory acts against children will provide law enforcement with additional information critical to preventing and promptly resolving incidents involving sexual abuse and missing persons.

[*N.J.S.A.* 2C:7–1.]

As noted by our Supreme Court in upholding the constitutionality of Megan's Law:

The remedy selected by our Legislature goes beyond the ability of citizens to request the criminal record of their neighbors when they may have no reason to make such requests. The remedy goes directly to the question of what a community can do to protect itself against the potential of re-offense by a group the Legislature could find had a relatively high risk of recidivism involving those crimes most feared, and those crimes to which the most vulnerable and defenseless were exposed—the children of society. *The spectacle of offenses committed by neighbors, known in the public records as significantly potential reoffenders, but not known to anyone else, and especially not known to those most likely to be affected, their neighbors, suggested the most obvious and practical degree of protection: a law that would tell neighbors and others who might be affected, of the presence of such offenders, no more and no less.*

[*Doe v. Poritz*, 142 *N.J.* 1, 18, 662 *A.2d* 367 (1995) (emphasis added).]

To accept defendant's interpretation of *N.J.S.A.* 2C:7–2—that there exists no requirement to register more than one residence—would eviscerate the statute and undermine the legislative intent to protect the public.

This finding is further premised on the well-recognized distinction between "residence" and "domicile." It is axiomatic that a person may have more than one residence. *See McQueen v. Brown*, 342 *N.J.Super.* 120, 132, 775 *A.2d* 748 (App.Div.2001) (" '[R]esidence' has been defined as '[t]he act or fact of living in a given place for some time.' *Black's Law Dictionary* 1310 (6th ed.1990). Here, the Legislature chose the term 'residence,' not 'domicile' "); *see also Arents v. General Acc. Ins. Co.*, 280 *N.J.Super.* 423, 428, 655 *A.2d* 936 (App.Div.1995), citing *Mercadante v. City of Paterson*, 111 *N.J.Super.* 35, 39, 266 *A.2d* 611 (Ch.Div. 1970), *aff'd o.b.*, 58 *N.J.* 112, 275 *A.2d* 440 (1971) ("[O]ur courts recognize that a person may have more than one residence but may not have more than one domicile.").

While no New Jersey case law has addressed the issue of multiple residences in the context of sex offender registration and notification statutes, other jurisdictions with similar legislation have determined that an offender has to register multiple residences. In *People v. Horn*, 68 *Cal.App.*4th 408, 80 *Cal.Rptr.*2d 310 (1998), the defendant was convicted of failing to register as a sex offender. He testified at trial that he resided with his grandmother, where he kept his personal property and received his mail. He

admitted that he also resided with a woman and her two children at a different address "from time to time," but that he considered his grandmother's home "to be his residence." *Id.* at 413, 80 *Cal.Rptr.*2d 310. On appeal, the defendant objected to the jury instruction, because the statute "did not require registration of a 'second place of residence.'" *Id.* at 414, 80 *Cal.Rptr.*2d 310.

The pertinent California jury instruction provided:

> As used in this instruction the term residence means a temporary or permanent dwelling place, which one keeps and to which one intends to return, as opposed to a place where one rests or shelters during a trip or a transient visit.

> Depending upon the circumstances, one may have a single place of residence or more than one place of residence.

> One who has one place or residence and then adds a second place of residence has changed his residence within the meaning of this law and has a duty to report this change resulting in an additional residence even though he may maintain a residence at the old place.

[*Id.* at 414–15, 80 *Cal.Rptr.*2d 310.]

In concluding that this instruction "correctly stated that a defendant is required to register an additional place of residence if he has one," *id.* at 415, 80 *Cal.Rptr.*2d 310, the court relied upon *People v. McCleod,* 55 *Cal.App.*4th 1205, 64 *Cal.Rptr.*2d 545 (1997), which rejected the argument that the jury had been misinstructed on the definition of "residence" in the sex offender registration statute. The *McCleod* court concluded that the term "residence" is "so easily understood by a person of common intelligence . . . that further definition is not required." *Id.* at 1218–19, 64 *Cal.Rptr.*2d 545. In reaching that conclusion, the *McCleod* court stated:

> Although domicile and residence are often in the same physical location and the term residence has at times been construed and used as a synonym for domicile, it has also often been noted that: " '[D]omicile' properly denotes the one location with which for legal purposes a person is considered to have the most settled and permanent connection, the place where he intends to remain and to which, whenever he is absent, he has the intention of returning but which the law may also assign to him constructively. Residence, on the other hand, denotes any factual place of abode of some permanency, that is, more than a mere temporary sojourn. While a person can have in law only one domicile, he may have several 'residences'

for different purposes ...." (*Whittell v. Franchise Tax Board* (1964) 231 *Cal. App.*2d 278, 284 [41 *Cal.Rptr.* 673].)

[*Id.* at 1217, 64 *Cal.Rptr.*2d 545.]

In noting that the purpose of the registration statute "is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future," *Horn, supra,* 68 *Cal.App.*4th at 417, 80 *Cal.Rptr.*2d 310, the *Horn* court ruled that,

> This objective would be defeated entirely were an offender allowed to remain at one or more undisclosed locations on a regular basis, even if the locations were not the offender's exclusive abode. An offender would hardly be subject to "surveillance at all times" if he or she were not required to register addresses at which the offender spent more than a brief, passing amount of time.
>
> Our construction of the statute does not impose an obligation on Horn which is "beyond [its] plain language" any more than the California's Supreme Court's holding that the statute was a continuous offense imposed such an unstated obligation. Although the word residence is in the singular throughout the statute, nothing in the language of section 290 compels a conclusion that an offender can have only one residence at a time. (See former § 290 subd. (1)(1).) Moreover, by referring to a "temporary residence," the Legislature acknowledged the fact that an offender could have more than one residence; the existence of a "temporary" residence presupposes the contemporaneous existence of a "permanent" one.
>
> This case provides a graphic example of how the statute could be easily evaded if we were to adopt the restricted meaning of residence put forth by Horn. An offender could satisfy the statute but violate other conditions of parole and avoid discovery by simply maintaining some indicia of residence at the registered location and declaring it to be such, while at the same time "living" for all intents and purposes for an extended duration at a different address entirely unknown to the authorities. We thus agree with the court in *McCleod* that a fair reading of the statute "contemplates notification by the offender when he is in a place where he is living or temporarily staying" for more than the limited time period specified in the statute. This broad construction of the word "residence" in section 290, which necessarily means that an offender may have more than one residence for purposes of the registration requirement, gives effect to the purpose for which the statute was enacted. (citations omitted)

[*Id.* at 417–18, 80 *Cal.Rptr.*2d 310.]

*Accord People v. Velasco,* 66 *Cal.App.*4th 748, 757, 78 *Cal.Rptr.*2d 259 (1998) ("It would be inconsistent with the fundamental purpose of this law to allow a sex offender to have two residences, one registered and one unregistered. Any such construction would be absurd on its face.")

Similarly, in *North Carolina v. Abshire,* 363 *N.C.* 322, 677 *S.E.*2d 444 (2009), the North Carolina Supreme Court reversed the Court of Appeals' decision that had overturned the defendant's conviction for failure to register a change of address on the basis that the State failed to carry its burden that the defendant had changed her address. The defendant testified at trial that she stayed at the unregistered address of her father's " 'off and on over about a three week period' ... [and] that 'almost, everyday' she still visited [the registered address] to care for her pets, wash clothes, or 'hang out.' " *Id.* at 448. She further claimed that "she maintained a private telephone line at [the registered address], never moved her belongings, and considered it her 'home' during the time she stayed at her father's residence." *Ibid.* The Court of Appeals had concluded that a "sex offender's 'home address' is a 'place where a registrant resides and where that registrant receives mail or other communication." *Id.* at 450, citing *State v. Abshire,* 192 *N.C.App.* 594, 666 *S.E.*2d 657, 663 (2008). The Supreme Court, however, observed that while the term "address" is not defined in the statute, its ordinary meaning as set forth in dictionaries is " '[a] description of the location of a person ... The location at which a particular organization or person may be found or reached' ... [and] 'the particulars of the place where someone lives.' " *Id.* at 450 (citations omitted). After noting that the term "address" is included in the sex offender registration statute, the *Abshire* court concluded that to the extent its meaning is unclear, it must look to the "spirit of the act and what the act seeks to accomplish," which in this case was "to assist law enforcement agencies and the public in knowing the whereabouts of sex offenders and in locating them when necessary." *Id.* at 451.

The *Abshire* Court thus rejected the Court of Appeals' analysis, holding that it

would thwart the intent of the legislature if a sex offender were allowed to actually live at a location other than where he or she was registered and not be required to notify the sheriff of that new address as long as he or she continued to receive United States Postal Service mail at the registered address. Such a result would enable sex offenders to elude accountability from law enforcement and would expose the public to an unacceptable level of risk.

> We conclude that the legislature intended the definition of address under the registration program to carry an ordinary meaning of describing or indicating the location where someone lives. As such, the word indicates what this Court has considered to be a person's residence. For instance, this Court noted in *Hall v. Wake County Board of Elections* that "[r]esidence simply indicates a person's actual place of abode, whether permanent or temporary." 280 *N.C.* 600, 605, 187 *S.E.*2d 52, 55 (1972); see also *Black's Law Dictionary* 1335 (8th ed.2004) (defining "residence" as "1. The act or fact of living in a given place for some time . . . 2. The place where one actually lives . . . *Residence* usu. Just means bodily presence as an inhabitant in a given place . . ."). Thus, a sex offender's address indicates his or her residence, meaning the actual place of abode where he or she lives, whether permanent or temporary. Notably, a person's residence is distinguishable from a person's domicile. *See Hall,* 280 *N.C.* at 605, 187 *S.E.*2d at 55. Domicile is a legal term of art that "denotes one's permanent, established home," whereas a person's residence may be only "temporary, although actual," "place of abode." *Id.*
> [*Id.* at 450–51, 666 *S.E.*2d 657.]

*Accord, North Carolina v. Fox,* 216 *N.C.App.* 153, 716 *S.E.*2d 261 (2011) (applying the *Abshire* definition of "address" and affirming conviction of defendant who resided with his girlfriend for several months).

In *Ohio v. Sommerfield,* 2006–Ohio–1420, 2006 *WL* 758747 (Ohio Ct.App.2006), the defendant owned a home in Delaware County, which was his registered address. According to prosecution witnesses, he began residing with his girlfriend in Union County, "twenty-four hours a day, seven days a week during June 2004 and at various times in the months thereafter." *Id.* at ¶ 6. The defendant's girlfriend and her daughter testified that his visits were intermittent, he had no key to the residence and kept no clothes or personal articles there. *Id.* at ¶ 7. After the jury was unable to reach a unanimous verdict, the trial court dismissed the indictment for failure to register the Union County address upon a finding of unconstitutional vagueness. *Id.* at ¶ 10. On the state's appeal and in response to the defendant's contention that the statute was impermissibly vague because the terms "residence" and "temporary domicile" were undefined, the Court of Appeals held that,

> Since the legislature chose not to provide a specific definition of the term in R.C. 2950.04, the term is construed with its ordinary meaning. *Glover,* 17 *Ohio App.*3d at 258, 479 *N.E.*2d 901. As noted in Black's definition of "residence," the general distinction between "residence" and "domicile" is that "domicile" incorporates an

intention to return; while someone can have more than one residence an individual can only have one domicile. *See also Board of Ed. Of City School Dist. of City of Oakwood v. Dille* (1959), 109 *Ohio App.* 344, 348, 165 *N.E.*2d 807 (distinguishing between "residence" and "domicile," and noting "two fundamental characteristics of a person's domicile are that it is single and continuing—that is to say, a person can have but one domicile at a given time, and such domicile continues until another is established"). Black's defines "domicile" as a "a person's true, fixed, [principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere." Black's Law Dictionary (8th Ed.2004). These are the commonly accepted definitions of the two terms.

In addition to their commonly accepted meanings, we can ascertain the meaning of these terms from the context of the statute. *Glover,* 17 *Ohio App.*3d at 258, 479 *N.E.*2d 901; *Jeandell,* 165 *Md.App.* at 36, 884 *A.*2d 739. While both "residence" and "temporary domicile" may have unique and technical definitions in various other contexts, it is clear that, as used in R.C. 2950.04, the legislature intended the terms to have their commonly accepted legal meanings. The legislature clearly announced its purpose in enacting Chapter 2950 in R.C. 2950.02(B): "it is the general assembly's intent to protect the safety and general welfare of the people of this state" by requiring registration for sex offenders "who will live in or near a particular neighborhood." Thus, the clear intent of the registration requirement is to discern where sex offenders are currently residing so as to inform the general public. In this context, the clear intent of the statute is to have sex offenders register in a county in which they are living or maintain a permanent dwelling. [*Id.* at ¶ 18–19.]

These cases serve to reinforce the conclusion that sex offenders subject to Megan's Law registration requirements who reside in multiple locations are required by statute to register each address where they reside. Consequently, defendant was on notice that his failure to register his Mount Olive residence was unlawful. (*Zarrilli* factors (a) and (b)).

Furthermore, the Court rejects defendant's premise that his behavior was neither a threat to the public nor created a threat of public harm because "he was in Mount Olive a very short amount of time." In this de minimis application, the Court must assume that defendant resided in Mount Olive for twenty-three (23) days as charged, i.e. between August 22, 2011, and October 3, 2011, except for the time he spent in the Morris County Correctional Facility between September 9, 2011, and September 28, 2011. Moreover, at oral argument, his counsel conceded that defendant "cohabitated" with his girlfriend in Mount Olive. The Supreme Court has held:

The ordinary understanding of cohabitation is based on those factors that make the relationship close and enduring *and requires more than a common residence,* although that is an important factor. Cohabitation involves an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage. These can include, but are not limited to, living together, intertwined finances such as joint bank accounts, sharing living expenses and household chores, and recognition of the relationship in the couple's social and family circle.

[*Konzelman v. Konzelman,* 158 *N.J.* 185, 202, 729 *A.*2d 7 (1999) (emphasis added).]

His residence at the Mt. Olive address was not for a "short time," and his failure to register is not de minimis. The statute's registration requirements are intended to prevent the exact harm that occurred, to wit, a convicted sex offender residing in Mount Olive without the local community's or police department's awareness. Thus, the risk of harm to the community was significant. (*Zarrilli* factors (c)-(e)). The other *Zarrilli* factors ((f)-(h)) are deemed inapplicable. Consequently, the Court concludes that defendant was required by statute to register in Mount Olive.

### B.  *Motion to Dismiss: Incorrect Charge*

This Court's limited role when considering a de minimis motion does not include whether the State indicted a defendant under the correct statute, because the Court must assume that the allegation actually occurred and "technically establishes the commission of a crime." *State v. Brown,* 188 *N.J.Super.* 656, 671, 458 *A.*2d 165 (Law Div.1983). Defendant, however, may raise this argument before the Criminal Division Judge assigned to this matter. Thus, the second prong of defendant's Motion to Dismiss is denied without prejudice.

### V.  *Conclusion*

For the aforementioned reasons, defendant's de minimis motion is denied.