An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-206

Filed 5 November 2025

Durham County, No. 21CR054436-310

STATE OF NORTH CAROLINA

v.

TONY LAMOND WILLIAMSON

Appeal by defendant from judgment entered 25 October 2023 by Judge Shamieka Lacher Rhinehart in Durham County Superior Court. Heard in the Court of Appeals 10 September 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Brent D. Kiziah, for the State.*

> *Cooper Strickland for defendant.*

FREEMAN, Judge.

Defendant appeals from judgment entered upon a jury verdict of guilty on the charges of felonious breaking and entering, larceny after breaking and entering, and conspiracy to commit felonious breaking and entering. On appeal, defendant argues the trial court (1) erred by denying defendant's motions to dismiss; and (2) plainly

erred by allowing the indictments and judgments of non-testifying co-defendants into evidence. After careful review, we conclude that the trial court did not err in denying defendant's motions to dismiss, and did not plainly err by allowing into evidence the indictments and judgments of non-testifying co-defendants. We dismiss defendant's ineffective assistance of counsel claim without prejudice.

## I.     Factual and Procedural Background

The evidence presented at trial tended to show the following. On 22 July 2021, Nathan Glines was spending the night at his father's duplex located at 1209 Linwood Avenue in Durham County. Nathan was sleeping in Apartment B of the duplex, connected to Apartment A, to "protect the property" due to a series of break-ins that had occurred in the surrounding community. Nathan was also there to protect a recently delivered clothes dryer, which was still in its cardboard box. Further, Nathan had a scheduled meeting with contractors at the property the next morning.

Shortly after midnight, Nathan was awoken by the noise of a rock going through the window of Apartment A. Nathan then heard three male voices speaking to each other, the breaking of window glass, and the movement of the recently delivered clothes dryer. While still inside the duplex, Nathan called the police to report an active break-in. Nathan remotely activated his car alarm, ran to his car, and turned on the car's lights while the three men were attempting to remove the dryer from the duplex. Nathan then heard three male voices speaking "really fast" and saw the three men fleeing from the neighbor's lawn. Nathan testified that he

determined the three men had removed the dryer from its cardboard box, carried it out of the bedroom in Apartment A, out of the back door of the duplex, and into the neighbor's yard, where it was abandoned when the three departed.

Officers from the Durham Police Department responded to Nathan's call and secured the area. While inspecting the scene, investigators located a rock and broken glass in the bedroom of Apartment A and found that a large piece of cardboard had been placed over the windowsill in the bedroom.

Investigators found twelve latent fingerprints on the dryer. Six of defendant's fingerprints were discovered on the top and right-hand side of the dryer. Investigators found the fingerprints of Gary Faucette on the north window frame exterior, top, and side of the clothes dryer. Investigators also found the fingerprints of Celledric Conrad on the exterior of the north window frame. Additionally, investigators found one unidentified latent fingerprint on top of the dryer. Charges were brought against defendant, Conrad, and Faucette for the 22 July 2021 offense because of the fingerprint evidence found at the scene and the fact that the dryer was "large and unwieldy and required multiple people to carry."

On 20 September 2021, the grand jury indicted defendant for breaking and entering, larceny after breaking and entering, and conspiracy with Conrad and Faucette to commit the felony of breaking and entering. On 12 September 2022, Faucette pleaded guilty to attempted breaking or entering and felony conspiracy. Similarly, Conrad pleaded guilty to felony breaking and entering on 6 February 2023.

Defendant's matter came on for trial on 23 October 2023 in Durham County Superior Court. The State called several witnesses over the course of the trial; however, neither Conrad nor Faucette were called to testify.

Crystal Denison, Assistant Superior Court Clerk of Durham County, testified about the indictments and judgments of Conrad and Faucette. During Denison's testimony, the State moved to have State's Exhibits 11 and 12, Conrad's judgment and indictment, respectively, introduced into evidence as self-authenticating documents. Defendant did not object to the admission of these documents, and the evidence was admitted.

Denison then began to read the judgment against Conrad to the jury. Denison stated that the offense date of Conrad's judgment was 22 July 2021 and that Conrad had pleaded guilty to felony breaking and entering. When the State asked Denison to read Conrad's indictment, defense counsel objected to the reading of the judgment and indictment on relevancy and hearsay grounds, which the trial court overruled. Denison then read the indictment of Conrad to the jury:

> A. The jurors for the State upon their oath present that on or about the date of the offense shown and in the county named above, [Conrad] unlawfully, willfully, and feloniously did break and enter a building located at 1209 L[i]nwood Avenue, Apartment A, Durham, NC, with the attempt to commit a felony there in statute 14-54(a).
>
> Q. And as to Count 2 in the indictment for Celledric Conrad.
>
> A. Also, the jurors of the State upon their oath present that

on or about the date of the offense shown and in the county named above, [Conrad] unlawfully, willfully, and feloniously did steal, take, and carry away a [clothes dryer] from the personal property of David Glines, pursuant to a violation of Section 14-54 of North Carolina General Statute 14-72(b)(2).

Q. And as to Count 3.

A. Also, the jurors of the State upon their oath present that on or about the date of offense shown and in the county named above, [Conrad] unlawfully, willfully, and feloniously did conspire with [defendant] and [Faucette] to commit felony breaking and entering G.S. 14-54 against David and Lisa Glines.

The State subsequently moved to introduce the judgment and indictment of Faucette into evidence, marked as State's Exhibits 13 and 14, respectively. Defense counsel did not object to the admission of these exhibits, and the evidence was admitted. Denison then read the judgment and indictment of Faucette to the jury:

Q. And turning now to States Exhibit 13, the record of judgment or conviction worksheet. What, if any, file number is shown in the judgment?

A. 21 CRS 54434.

Q. And turning to State's Exhibit 14, what, if any, file number is shown in the indictment?

A. 21 CRS 54434.

Q. And with regard back to State's Exhibit 13. At the judgment, if you could read for the jury, the two counts included in the judgment and the dates of the offense.

A. Count 1 is attempted breaking and entering. July 22, 2021, and Count 2 is felony conspiracy offense date July 22,

2021.

Q. All right. We won't go through the whole indictment for this, but if you could read off Count 3 that appears in State's Exhibit 14 on the indictment for [Faucette].

A. Also, the jurors for the State, upon their oath, present that on or about the date of the offense shown and in the county named above [Faucette] unlawfully, willfully, and feloniously did conspire with [defendant] and [Conrad] to commit felony breaking and entering against David and Lisa Glines.

Q. And does that count correspond to the count -- the count listed in the judgment for felony conspiracy?

A. Yes.

At the conclusion of the trial, and after the trial court denied defendant's motions to dismiss, the jury returned a verdict of guilty on all charges. Defendant's sentencing hearing took place on 18 April 2024, and the trial court sentenced defendant in the presumptive range of a minimum of 18 months and a maximum of 31 months for breaking and entering. The trial court consolidated the larceny after breaking and entering and conspiracy to commit breaking and entering, and sentenced defendant in the presumptive range of 18 months minimum and 31 months maximum to run at the expiration of the breaking and entering conviction. Defendant filed notice of appeal on 30 April 2024.

## II.    Jurisdiction

Defendant appeals from the final judgment of the Superior Court pursuant to N.C.G.S. § 7A-27(b)(1) and N.C.G.S. § 15A-1444(a). North Carolina Rule of Appellate Procedure 4(b) states that the notice of appeal shall specify, among other things, the court to which the appeal is taken. Defendant's notice of appeal failed to designate the court to which the appeal is taken. This Court has found that "a defect in a notice of appeal should not result in loss of the appeal as long as the intent to appeal can be fairly inferred from the notice and the appellee is not misled by the mistake." *State v. Springle*, 244 N.C. App. 760, 763 (2016) (cleaned up). The State-appellee, in the case at bar, concedes that it is not misled by this mistake. Further, the intent to appeal can be fairly inferred from the notice of appeal. Accordingly, this Court has jurisdiction over defendant's appeal.

### III.  Standard of Review

We review a denial of a motion to dismiss at the close of evidence de novo. *State v. Collins*, 283 N.C. App. 458, 465 (2022). "When the Court reviews an alleged violation of defendant's constitutional rights, the appropriate standard of review is de novo." *State v. Glenn*, 220 N.C. App. 23, 25 (2012) (cleaned up). "Where a defendant fails to preserve errors at trial, this Court reviews any alleged errors under plain error review." *State v. Koke*, 264 N.C. App. 101, 107 (2019). "[T]his Court reviews whether a defendant was denied effective assistance of counsel de novo." *State v. Wilson*, 236 N.C. App. 472, 475 (2014).

### IV. Discussion

Defendant raises two arguments on appeal. First, defendant contends that the trial court erred by denying defendant's motions to dismiss the breaking and entering and conspiracy charges. Second, defendant argues that the trial court plainly erred by allowing the indictments and judgments of non-testifying co-defendants into evidence. We address each argument in turn.

**A. Motions to Dismiss**

Defendant first contends that the trial court erred by denying defendant's motions to dismiss, arguing that the State could not prove with absolute certainty that defendant's fingerprints were not placed on the dryer at some point prior to the commission of the crime. Defendant argues that the State's case is "based on conjecture that merely raises a suspicion as to defendant's commission of the offense." We disagree.

"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Scott*, 356 N.C. 591, 595, (2002) (citation omitted). "[W]hether the evidence presented constitutes substantial evidence is a question of law for the court." *State v. Earnhardt*, 307 N.C. 62, 66 (1982) (citation omitted).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The terms "more than a scintilla of evidence"

and "substantial evidence" are in reality the same and simply mean that the evidence must be existing and real, not just seeming or imaginary.

*Id.* (cleaned up) . The "general rule" is that if there is "any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely raises a suspicion or conjecture in regard to it, the case should be submitted to the jury." *Id.* (citing *State v. Johnson*, 199 N.C. 429, 431 (1930)).

When "evaluating the sufficiency of the evidence to support a criminal conviction, the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom." *State v. Dover*, 381 N.C. 535, 547 (2022) (cleaned up).

"Fingerprint evidence, standing alone, is sufficient to withstand a motion [to dismiss] only if there is substantial evidence of circumstances from which the jury can find that the fingerprints *could only have been impressed at the time the crime was committed.*" *State v. Irick*, 291 N.C. 480, 491–92 (1977) (emphasis added) (cleaned up). "The trial court is [n]ot required to determine that the evidence excludes every reasonable hypothesis of innocence prior to denying a defendant's motion to dismiss." *State v. Powell*, 299 N.C. 95, 101 (1980)

Here, defendant maintains that the State failed to present substantial evidence of his identity as the perpetrator. Specifically, defendant contends that "our

State's appellate courts have identified a variety of relevant circumstances that may show that a perpetrator's fingerprints were only impressed at the time committed," and that none of those relevant circumstances are present here. Our Supreme Court stated in *State v. Irick*, that other circumstances constituting such substantial evidence "include statements by the defendant that he had never been on the premises" and "statements by prosecuting witnesses that they had never seen the defendant before or given him permission to enter the premises." 291 N.C. at 492 (cleaned up).

Although Nathan testified that he was unable to identify the perpetrators, and the only fingerprint evidence connected to defendant personally appeared on the dryer, there exists substantial evidence of other circumstances that tend to show that defendant was one of the perpetrators and that defendant's fingerprints could only have been impressed at the time the crime was committed. The evidence in this case, taken in the light most favorable to the State, tends to show that: (1) Nathan was staying at the duplex, in part, to protect the clothes dryer that had just been delivered; (2) the dryer was in the bedroom of Apartment A and was still in its cardboard box prior to the offenses in question; (3) Nathan was awoken and heard three voices in Apartment A, the breaking of glass, and the transportation of the dryer; (4) the dryer was very large, unwieldy, and required multiple people to carry it; (5) Nathan activated his car's alarm, heard three voices talking "really fast" and saw the three men running from the neighbor's lawn; (6) the dryer had been removed

from its cardboard box, carried out of the bedroom in Apartment A, out of the back door of the duplex, and into the neighbor's yard, where it was left when the three men departed; (7) the police arrived shortly after Nathan made the 911 call and investigators arrived shortly thereafter; and (8) six of defendant's fingerprints were found on the top and right-hand side of the clothes dryer.

Considered in the light most favorable to the State, a reasonable mind might accept these circumstances as adequate to support the conclusion that defendant was one of the perpetrators and that defendant's fingerprints could only have been impressed at the time the crime was committed. While defendant maintains that the State could not prove with absolute certainty that defendant's fingerprints were not imprinted on the dryer at some point prior to the commission of the crime, the trial court is not required to determine that the evidence presented must exclude every reasonable hypothesis of innocence prior to denying a defendant's motion to dismiss. *See Powell*, 299 N.C. at 101. Accordingly, the trial court did not err in denying defendant's motions to dismiss the breaking and entering and conspiracy charges.[1]

## B. Indictments and Judgments of Conrad and Faucette

---

[1] Defendant was also found guilty of larceny after breaking and entering; however, defendant's motions to dismiss at the trial were focused on the charges of felonious breaking and entering and conspiracy to commit felonious breaking and entering.

Next, defendant argues that the trial court erred by allowing the indictments and judgments of non-testifying co-defendants into evidence. Specifically, defendant contends that this violated his rights under the Confrontation Clause.

### 1. *Waiver*

A criminal defendant has the constitutional right to be confronted by the witnesses against him. U.S. Const. amend. VI; *see also State v. Braswell*, 312 N.C. 553, 558 (1985). "The constitutional right of an accused to be confronted by the witnesses against him is a personal privilege which he may waive expressly or by a failure to assert it in apt time even in a capital case." *Braswell*, 312 N.C. at 558 (cleaned up). A waiver of this right may be effectuated by defendant's trial counsel. *State v. Splawn*, 23 N.C. App. 14, 18 (1974). "Failure to object in apt time to inadmissible evidence, however, constitutes a waiver." *State v. Burgess*, 55 N.C. App. 443, 447 (1982).

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). It is also "well established that the admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character." *State v. Campbell*, 296 N.C. 394, 399 (1979).

- 12 -

Here, defense counsel did not object when the State moved to have Conrad's judgment and indictment introduced into evidence, and the evidence was admitted. Defense counsel only objected—on relevancy and hearsay grounds—*after* the State requested that the witness read the indictment of Conrad to the jury. Later, when the State moved to introduce the indictment and judgment of Faucette, defense counsel again did not object. Thus, defendant waived his right to be confronted by the witnesses against him by failing to object to the indictments and judgments of Conrad and Faucette with specificity and in an apt time. Accordingly, we review for plain error.

## 2. *Plain Error Review*

"Where a defendant fails to preserve errors at trial, this Court reviews any alleged errors under plain error review." *Koke,* 264 N.C. App. at 107. On plain error review:

> First, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict. Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Reber*, 386 N.C. 153, 158 (2024) (cleaned up). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant

was guilty." *State v. Lawrence*, 365 N.C. 506, 518 (2012) (cleaned up). To show that a jury probably would have reached a different result, there must exist "a showing that the outcome is significantly more likely than not. In ordinary English usage, an event will 'probably' occur if it is 'almost certainly' the expected outcome[.]" *Reber*, 386 N.C. at 159.

Plain error review is, "only [applied] in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *Lawrence*, 365 N.C. at 516–17 (cleaned up). "While a miscarriage of justice, most often meaning actual innocence, would likely satisfy this standard, an error may also satisfy the standard 'independent of the defendant's innocence.' " *Id.* at 516 (citing *United States v. Olano*, 507 U.S. 725, 736–37 (1993)). This standard is unlikely to be satisfied "when evidence of the defendant's guilt is overwhelming." *Id.* "The real threat then to the fairness, integrity, and public reputation of judicial proceedings would be if the defendant, despite the overwhelming and uncontroverted evidence of guilt, had the conviction overturned on appeal." *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 634 (2002)).

When introducing the judgments and indictments of non-testifying co-defendants, our Courts have held that "[t]he 'clear rule' is that evidence of convictions, guilty pleas, and pleas of nolo contendere of non-testifying co-defendants is inadmissible unless introduced for a legitimate purpose, i.e., used for a purpose other

than evidence of the guilt of the defendant on trial." *State v. Batchelor*, 157 N.C. App. 421, 430 (2003). The clear rule also applies to the charges of a co-defendant. *Id.* The policies underlying the "clear rule" are that "an individual defendant's guilt must be determined solely on the basis of the evidence presented against that defendant," and "that the introduction of evidence of charges against co-defendants deprives a defendant of the right to cross examination and confrontation[.]" *Id.* (citing *State v. Gary*, 78 N.C. App. 29, 37 (1985)) (emphasis omitted).

Defendant argues that the admission and reading of Conrad and Faucette's indictments and judgments into evidence constitutes plain error because it was in violation of the "clear rule." Defendant further submits that the indictments and judgments were introduced solely as evidence of the guilt of the defendant on trial. The State concedes that "it appears that the evidence of the criminal judgments and indictments against [Conrad] and [Faucette] were used for no other purpose than as evidence of the guilt of [d]efendant." Accordingly, we conclude that the trial court erred by admitting the indictments and judgments of Conrad and Faucette, in violation of the clear rule. However, this error did not amount to plain error.

The evidence in this case tends to show that (1) Nathan was staying at the duplex, in part, to protect the clothes dryer that had just been delivered; (2) the dryer was in the bedroom of Apartment A and was still in its cardboard box prior to the offense in question; (3) Nathan was awoken and *heard three voices* in Apartment A, the breaking of glass, and the transportation of the dryer; (4) the dryer was very large,

unwieldy, and required *multiple* people to carry it; (5) Nathan activated his car's alarm, *heard three voices* talking "really fast" and *saw the three men* running from the neighbor's lawn; (6) the dryer had been removed from its cardboard box, carried out of the bedroom in Apartment A, out of the back door of the duplex, and into the neighbor's yard, where it was left when the *three men departed*; (7) the police arrived shortly after Nathan made the 911 call and investigators arrived shortly thereafter; (8) in total, twenty-four fingerprint cards were collected; (9) twelve of Faucette's fingerprints were collected from an exterior window and the dryer; (10) two of Conrad's fingerprints were collected an exterior window of the duplex; and (11) six of defendant's fingerprints were found on the top and right-hand side of the clothes dryer. Accordingly, defendant cannot show that the jury "almost certainly" would have reached a different result absent the error.

Likewise, this is not a miscarriage of justice because the evidence of defendant's guilt of conspiracy is overwhelming. Again, Nathan heard three male voices inside of Apartment A. Nathan then heard the shifting of the cardboard on the dryer and three men moving the dryer. Evidence was introduced, through a latent print examiner, that Faucette's fingerprints were found on the dryer and the duplex. Additionally, Conrad's fingerprints were found on the exterior window of the duplex. The circumstantial evidence of Nathan's firsthand account and the direct fingerprint evidence of all three men overwhelmingly support defendant's guilt of conspiracy.

Although the trial court erred in admitting the indictments and judgments of Conrad and Faucette, we conclude defendant has not satisfied his heavy burden of showing plain error. Even with a violation of the "clear rule," the evidence against defendant was substantial to establish conspiracy and it is unlikely that the error had a probable impact on the jury's finding that the defendant was guilty. Due to the overwhelming evidence of defendant's guilt, we do not find the error was so fundamental as to the result in a miscarriage of justice or denial of a fair trial. Accordingly, we hold the trial court did not commit plain error.

### 3. *Ineffective Assistance of Counsel*

Defendant alternatively argues that trial counsel's failure to object to the indictments and judgments of Mr. Conrad and Mr. Faucette was ineffective assistance of counsel. "A defendant's right to counsel includes the right to the effective assistance of counsel." *Braswell*, 312 N.C. at 561. "When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness. *Id.* at 561–62. To make a showing of ineffective assistance of counsel, a defendant must satisfy a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to

deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord Braswell*, 312 N.C. at 562. "Prejudice is established by showing 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *State v. Campbell*, 359 N.C. 644, 690 (2005) (quoting *Strickland*, 466 U.S. at 694).

"There exists a strong presumption that counsel's conduct falls within the wide range of professional assistance, but this presumption is rebuttable." *State v. Gillard*, 386 N.C. 797, 867 (2024) (quoting *Strickland*, 466 U.S. at 689) (cleaned up). Notwithstanding this rebuttable presumption, "[o]nly when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing will an ineffective assistance of counsel claim be decided on the merits on direct appeal." *State v. Edgar*, 242 N.C. App. 624, 632 (2015) (cleaned up). "Because the reasonableness of counsel's performance at trial is a fact-intensive inquiry, the proper course is generally to dismiss the claim without prejudice to allow for a hearing and further fact finding." *Gillard*, 386 N.C. at 867 (cleaned up).

Based on a thorough examination of the "cold record," we cannot establish whether defense counsel's failure to object constitutes ineffective assistance of

counsel. We are unable to determine defense counsel's trial strategy in not specifically and aptly objecting to the indictments and judgments of non-testifying co-defendants. Accordingly, we dismiss defendant's ineffective assistance of counsel claim without prejudice.

## V. Conclusion

The trial court did not err by denying defendant's motions to dismiss, it did not plainly err by allowing the indictments and judgments of non-testifying co-defendants into evidence, and we dismiss defendant's ineffective assistance of counsel claim without prejudice.


NO ERROR IN PART; NO PLAIN ERROR IN PART.

Chief Judge DILLON and Judge ZACHARY concur.

Report per Rule 30(e).